[Civ. No. 45834. First Dist., Div. One. Dec. 14, 1979.]

HENRY STEVEN MARINI, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SANTA CRUZ
JUDICIAL DISTRICT OF SANTA CRUZ COUNTY,
Defendant and Appellant.

830

COUNSEL

Clair A. Carlson, County Counsel, A. Terry Slocum and Jonathan Wittwer, Assistant County Counsel, for Defendant and Appellant.

Perry E. Olsen for Plaintiff and Respondent.

OPINION

THE COURT.*—The Municipal Court for the Santa Cruz Judicial District of Santa Cruz County (hereafter Municipal Court) appeals from an order of the Superior Court of Santa Cruz County (hereafter Superior Court), made after an appealable judgment (Code Civ. Proc., § 904.1, subd. (b)), ordering the County of Santa Cruz to pay $1,500 on account of attorney fees to respondent Henry Steven Marini. We reverse.

Respondent had been charged in Municipal Court with a violation of Vehicle Code section 23102, subdivision (a) (driving under the influence of intoxicating liquor), and had sought admittance to a

*Before Racanelli, P. J., Elkington, J., and Newsom, J.

preconviction diversion and treatment program for drinking drivers which had been instituted in Santa Cruz County by the district attorney.

The local program, based neither in statute nor in ordinance, was available to persons charged with driving under the influence of intoxicating liquor. Defendant and counsel were required to sign a stipulation and waiver by which defendant effectively waived his constitutional rights and agreed to submit the charges for a determination of guilt or innocence on the basis of the arrest report and the results of blood-alcohol testing. Municipal Court would be asked to continue the matter for one year. During the year, defendant would undergo treatment provided by a contracting firm at defendant's expense. Should defendant fail to complete the year of treatment he would be returned to court and the matter submitted under the original charges for determination based on his stipulation. Should defendant complete the year of treatment, the charge would be reduced to reckless driving and defendant would plead guilty to that charge.

Shortly before respondent was charged, a new statewide statute authorizing postconviction programs of treatment for drinking drivers (Stats. 1977, ch. 890, pp. 2663-2670, codified primarily at Welf. & Inst. Code, § 19975.01 et seq., ultimately based on 1977 Sen. Bill No. 38 and commonly known as SB 38) went into effect. SB 38 authorized treatment programs which, like the local program, would provide for a year of rehabilitative treatment and would permit a repeat violator of Vehicle Code section 23102 to avoid the mandatory jail term and license suspension otherwise incident to second and subsequent offenses; but unlike the local program, an SB 38 program (available only *after* conviction) would not keep the new section 23102 charge off the driver's record.

Municipal Court received an opinion from the California Attorney General to the effect that the local program was preempted by SB 38. When respondent and the district attorney requested a one-year continuance to permit respondent to participate in the local program, Municipal Court took the position that the local program was preempted and denied the continuance.

Respondent, and another individual whose circumstances were similar, then separately petitioned Superior Court for a writ of mandate to compel Municipal Court to grant the continuances. The petitions were

consolidated and the Superior Court concluded that SB 38 did *not* preempt the local program, reasoning that the Legislature did not intend to preempt local treatment programs and preemption would have violated the constitutional principle of separation of powers. Accordingly, Superior Court ordered Municipal Court "to exercise its discretion, in light of the ruling embodied herein, as to whether or not to grant a continuance . . . . "

These rulings were embodied in a judgment of Superior Court which was entered on May 11, 1978. Notice of entry was mailed by the clerk on May 12, 1978. Respondent filed a memorandum of costs on May 12, 1978; the memorandum contained no claim for attorney fees. On July 11, 1978, the 60th day after mailing of notice of entry, respondent moved for an order awarding attorney fees upon the "private attorney general" theory approved by the California Supreme Court in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (hereafter *Serrano III*) and codified in Code of Civil Procedure section 1021.5.[1] Municipal Court did not appeal from the judgment. In September 1978, Superior Court made and entered the attorney-fee order appealed from.

### 1. *Timeliness of motion and order.*

Municipal Court preliminarily contends that Superior Court could not grant respondent's attorney-fee motion for two procedural reasons: Because respondent did not comply with the procedures for claiming taxable costs, and (alternatively) by the time Superior Court purported to act on the motion, its judgment had become "final" and no further jurisdiction to order attorney fees existed.

It has been held that attorney fees awarded pursuant to statute are costs (*T.E.D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal. App.3d 59, 62 [112 Cal.Rptr. 910]). In general, costs must be claimed

---

[1]Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

We assume arguendo, but do not decide, that appellant Municipal Court is both a "party" and a "public entity" within the meaning of the statute.

by memorandum no later than 10 days after entry of judgment (Code Civ. Proc., § 1033). ■ But section 1021.5, pursuant to which the attorney fees were awarded, clearly provides a special motion procedure plainly intended to be initiated after the result of the action is known but subject to no express time limit. The motion procedure sharply distinguishes a claim for fees under section 1021.5 from an ordinary costs claim which is made not by motion but by memorandum and which is brought to hearing (if at all) not by the claimant but by the adversary's motion to tax (Code Civ. Proc., § 1033). In our view the more specific provisions of section 1021.5 control the more general procedure described in section 1033 (cf. *Estate of Kramme* (1978) 20 Cal.3d 567, 576 [143 Cal.Rptr. 542, 573 P.2d 1369]). We also note that the trial court has broad power to permit deviations from section 1033 (cf., e.g., *Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 380-381 [115 Cal.Rptr. 648, 525 P.2d 88]). Respondent did not waive his fees claim by failing to include it in his costs memorandum.

Municipal Court contends, alternatively, that Superior Court lost jurisdiction to award attorney fees when time for appeal from the judgment expired. Respondent's motion was filed on the last day of the appeal period; there was no appeal from the judgment; Superior Court made its attorney-fee order two months later. It is the general rule that "when, by lapse of time for appeal or other direct attack on the judgment. . .it becomes final, the cause is no longer pending and the court has no further jurisdiction of the subject matter." (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 218, p. 751.) But the concept of finality of trial court judgments, and the effect of such finality upon the court's subject-matter jurisdiction, are rendered elastic by numerous exceptions and qualifications to the general rule. Thus, for example, it is well established that despite "finality" a trial court can set aside a wholly void judgment, correct clerical errors in the judgment, modify certain kinds of judgments, exercise powers which it has expressly reserved, rule upon a pending motion to tax costs, make any of a variety of orders in enforcement of the judgment, and, in general, deal with and dispose of matters which can be classified as "ancillary and collateral" to the judgment. Applications for attorney fees, and proceedings upon such applications, have been treated as "ancillary and collateral" matters in this sense (cf., e.g., *Mabee* v. *Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 429-430 [152 Cal.Rptr. 31]; *Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782]; *Painter* v. *Estate of Painter* (1889) 78 Cal.

625, 627-628 [21 P. 433]). Jurisdiction to hear such an application even after "finality" can be conferred by implication by the statute which authorizes the attorney-fee award (cf. *Painter* v. *Estate of Painter, supra; American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 67 [76 Cal.Rptr. 898]). ■ We infer such a grant of jurisdiction from the language of section 1021.5: The statute plainly requires that the claimant make a motion, founded on a showing that, among other things, the principal action "*has resulted* in the enforcement of an important right" and that "a significant benefit...*has been conferred.*" (Italics added.) We conclude that the use of language couched in the past tense implies that the necessary showings *could not* be made until after the principal judgment was final (cf. *Braude* v. *Automobile Club of Southern Cal.* (1978) 78 Cal.App.3d 178, 187 [144 Cal.Rptr. 169]; *Mabee* v. *Nurseryland Garden Centers, Inc., supra,* 88 Cal.App.3d 420, 430; *Painter* v. *Estate of Painter, supra,* 78 Cal. 625, 627-628) so that a motion for attorney fees under section 1021.5 *need not* be made and determined until after the judgment is final.

We are not persuaded by Municipal Court's argument that, by waiting until the last day of the appeal period to file his motion, respondent had lulled Municipal Court into a decision not to appeal from the principal judgment. The judgment and the fee order were separately appealable (cf. 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 55, pp. 4069-4070; Code Civ. Proc., § 904.1, subd. (b)). We find no theoretical link between the order for attorney fees and a decision to appeal from the judgment, and from a tactical standpoint it would have been appropriate for Municipal Court (were it so advised) to have filed a precautionary appeal from the judgment pending respondent's decision as to whether to apply for fees. We find no inequity. Superior Court retained jurisdiction to act on respondent's motion.

## 2. *Propriety of the award.*

Municipal Court next contends that the order for attorney fees was an abuse of Superior Court's discretion. We agree. Our conclusion compels reversal.

■ As defined in *Serrano III, supra,* and in section 1021.5, and carefully analyzed in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200] (hereafter *Woodland Hills*), the private attorney general theory is clearly

designed to encourage private enforcement of important public rights (cf. *Serrano III*, 20 Cal.3d at pp. 42-48; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10]; *Woodland Hills*, 23 Cal.3d at pp. 924-925): true public-interest litigation conducted by protagonists who are truly private attorneys general. Each of the three pivotal elements of California's private attorney general theory directly implements the general requirement that the benefit provided by the protagonist's action must inure primarily to the *public* and be *substantial* in a doctrinal if not a material sense:

(1) The public right which the private protagonist invokes must be *important*: The award cannot be based on trivial or peripheral public policies (cf. *Bruno v. Bell* (1979) 91 Cal.App.3d 776, 786-787 [154 Cal.Rptr. 435]). Trial courts are empowered and expected to "ascertain the 'strength' or 'societal importance' of the right involved" (*Woodland Hills, supra*, 23 Cal.3d at p. 935).

(2) The benefit which the action confers must be *significant* and must inure to *the general public or a large class of persons*: Again, the trial court must "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case" (*Woodland Hills, supra*, 23 Cal.3d at pp. 939-940).

(3) The necessity and financial burden of *private* enforcement must be "such as to make the award appropriate." It is not enough that the protagonist has limited financial resources: "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.'" (*County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71], citing *Serrano III, supra*, 20 Cal.3d at pp. 45-46, fn. 18, and quoted in *Woodland Hills, supra*, 23 Cal.3d at p. 941.)

Determination of the existence of these three pivotal elements is to be entrusted to the trial court's discretion (cf. *Woodland Hills, supra*, 23 Cal.3d at pp. 935-943). To warrant reversal on the ground of abuse of discretion "'. . .it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage

of justice,'" but discretion may not be exercised whimsically and, accordingly, reversal is appropriate "where no reasonable basis for the action is shown." (6 Witkin, Cal. Procedure, Appeal, *supra*, §§ 242-244, at pp. 4234-4235.)

■ Careful analysis of the true scope and significance of respondent's lawsuit compels the conclusion that there was no reasonable basis for a private attorney general award in this action.

Respondent was charged with a violation of law. When Municipal Court declined to continue the matter, respondent was confronted by the prospect of conviction. He promptly set about, by means of commendably effective advocacy, to reverse Municipal Court's conclusion that the local program was preempted by SB 38. But the record contains no suggestion that respondent did so for any purpose other than to serve two pressing needs of his own: to avoid conviction, and to obtain such benefit as the local program might provide him. Any public value derived from the result respondent obtained was, so far as the record shows, wholly coincidental to the attainment of respondent's personal goals.

Nor do the public benefits which respondent claims necessarily measure up to the standard of significance dictated by *Serrano III, supra*, section 1021.5, and *Woodland Hills, supra*.

Respondent contends that he has vindicated the important constitutional principles of local autonomy (Cal. Const., art. XI, § 7) and separation of powers (Cal. Const., art. III, § 3). The importance of these principles cannot be gainsaid (cf. *Serrano III, supra*, 20 Cal.3d at p. 46, fn. 18), but it is by no means clear that respondent's action *enforced* or *vindicated* these principles in the requisite sense. No one disputed the principles; Municipal Court, with advice from the California Attorney General, sought to construe and to apply them; Superior Court in ultimate effect disagreed with the Attorney General and with Municipal Court. In these circumstances Superior Court's order amounted to "enforcement" or "vindication" of the constitutional principles, if at all, only in the broadest and most theoretical sense.

Respondent also contends that he has secured to drinking drivers and to other members of the public in Santa Cruz County substantial benefits arising out of the continued operation of the local program. But it

must be borne in mind that Superior Court was not called upon to adjudicate the value of the local program (which all conceded); it did not declare that respondent, his coapplicant, or anyone else was entitled to be admitted to the program, simply mandating Municipal Court to *consider* whether to admit the two applicants. Neither did it purport to compare the worth of the local program with the potential worth of the program authorized by SB 38 nor require that the district attorney continue to maintain the local program. Rather, it simply held that the district attorney *could* maintain the local program in his discretion and neither foreclosed nor sanctioned implementation of SB 38 in Santa Cruz County. Thus analyzed, the benefits respondent argues seem markedly lacking in substance.

In any event, it is clear to us from the record that (to paraphrase *County of Inyo* v. *City of Los Angeles, supra,* 78 Cal.App.3d at p. 90) respondent's action was "not a 'public interest' lawsuit in the sense that it [was] waged for values other than" respondent's, that "the litigation [was] self-serving," and that for want of the pivotal element of predominant public interest—if for no other reason—the attorney-fee order was an abuse of discretion and must be reversed.

Our conclusion disposes as well of respondent's application, apparently made for the first time in his brief, for a similar award of attorney fees in connection with this appeal. We also note with approval the reasoning of *Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747, 759-760 [155 Cal.Rptr. 269], with respect to a similar claim.

Respondent is not entitled to attorney fees. The order appealed from is reversed.

A petition for a rehearing was denied January 7, 1980, and respondent's petition for a hearing by the Supreme Court was denied February 14, 1980.