[Civ. No. 54157. First Dist., Div. Two. Apr. 13, 1984.]

MARVIN SCHMID, Plaintiff and Respondent, v.
RICHARD LOVETTE et al., Defendants and Appellants.

Counsel

John K. Van de Kamp, Attorney General, Charlton G. Holland and Asher Rubin, Deputy Attorneys General, Russell Taylor and Taylor & Field for Defendants and Appellants.

Amitai Schwartz, Alan L. Schlosser, Margaret C. Crosby and James Chanin for Plaintiff and Respondent.

Opinion

KLINE, P. J.—

## Introduction

The Richmond Unified School District and certain officials thereof appeal the award of attorney's fees against them and in favor of plaintiff Marvin Schmid. Said fees were awarded in connection with plaintiff's successful action against appellants and various state agencies and officials[1] in which the court granted injunctive relief and declared the unconstitutionality of former Education Code sections 7001, 7003 and 7006.[2] These statutes required that employees of school and community college districts subscribe to an oath stating they are not knowing members of the Communist Party. The sole issue on appeal is whether the superior court abused its discretion in awarding attorney's fees to plaintiff's counsel pursuant to Code of Civil Procedure section 1021.5 (California private attorney-general statute) and 42 United States Code section 1988 (awarding fees to the "prevailing party" in civil rights litigation).

## Statement of the Case

Plaintiff sought injunctive and declaratory relief by way of an action in the Superior Court of Contra Costa County against officials of the district and against the district itself, officials of the Contra Costa County Community College District and the district itself, and against the State Superintendent of Public Instruction and the State Board of Education on the

---

[1] The Superintendent of Public Instruction of the State of California and the State Board of Education initially filed an appeal in this action but subsequently requested that it be dismissed. By order dated March 15, 1982, we granted that request.

[2] Education Code section 7000 through 7007 were effective until January 1982, when they were repealed by the Legislature. (Stats. 1981, ch. 470, § 11.)

grounds that administration and enforcement of the non-Communist Party oath was repugnant to the state and federal Constitutions.

On April 24, 1981, the superior court granted summary judgment to plaintiff. On June 2, 1981, the court filed its judgment restraining administration and enforcement of the unconstitutional oath provision of the statutes and ordered the state defendants to notify all school and community college districts that the statutes are unconstitutional and void and requiring the State Board of Education to promulgate regulations forbidding their enforcement. The court also awarded reasonable attorney's fees against the Richmond Unified School District defendants, and reserved jurisdiction to fix the amount of the fee and enforce the award.

### FACTS

Plaintiff Marvin Schmid is a resident taxpayer of the Richmond Unified School District and the Contra Costa Community College District. In early 1980 she applied for a teaching position with the Richmond Unified School District on two occasions and was required to sign statements that "I am not knowingly a member of the Communist Party." She signed the required oath, but "wrote a disclaimer beneath it, objecting to discrimination against any group in public employment."

On July 2, 1980, one of plaintiff's attorneys, cooperating with the American Civil Liberties Union of Northern California (ACLU), wrote Dr. Richard Lovette, the district superintendent, "demanding that you immediately cease administering or attempting to administer the . . . oath to any of your employees or prospective employees." Dr. Lovette responded, in pertinent part: "In response to your letter of July 2, 1980, I wish to inform you that I have met with members of the Board of Education and a decision has been reached concerning your demand. . . . The Board of Education will continue to administer the oath described above, which includes the presentation of the oath on an employment application. This is a requirement of the Education Code."

On December 9, 1980, plaintiff filed her complaint in the superior court.

The Contra Costa Community College District defendants filed a disclaimer of interest in the lawsuit since the college district did not administer the oath and did not intend to do so. The State Board of Education and Superintendent of Public Instruction admitted all allegations of the complaint, including the allegation that the statutes were unconstitutional, except allegations that they had not followed the constitution.

The Richmond Unified School District defendants, unlike all other defendants, denied most of the critical allegations of the complaint and vigorously opposed the relief sought.[3]

Plaintiff moved for summary judgment on March 9, 1981. Plaintiff included in her moving papers several declarations designed to show the need for injunctive relief and the broad impact that a declaration of unconstitutionality would have throughout the state. Benjamin Visnick filed a declaration stating that he had been required by the Richmond Unified School District to sign a statement under oath stating that he did not belong to the Communist Party and that he was required to do so on January 12, 1981, after the filing of this lawsuit. James Kilgore of Hacienda Heights, California, filed a declaration stating that he had been required to sign the non-Communist oath by the Hacienda-La Puente Unified School District in Los Angeles County in January 1981. Sandra Obermeyer, a law student extern with the ACLU, filed a declaration showing that she had contacted 31 school districts and that the vast majority did not administer or enforce the oath. A few districts, however, continued to do so, including the Turlock Unified School District, the Hickman Unified School District, Ceres Unified School District, and the Office of Education of San Benito County; Obermeyer later received a copy of the Stanislaus County Department of Education oath for applicants for employment with the school district, which oath included the challenged non-Communist Party member oath.

The district defendants' response to the motion was to renew its grounds for opposing the earlier motion for preliminary injunction and also to contend that fees should not be awarded.

On April 24, 1981, the court filed its memorandum of decision granting summary judgment and indicating its intention to award reasonable attorney's fees against the district defendants.[4] The court found that the challenged statutes were clearly "repugnant to both the United States and California Constitutions," citing e.g., *Keyishian* v. *Board of Regents* (1967) 385 U.S. 589 [17 L.Ed.2d 629, 87 S.Ct. 675]; *Elfbrandt* v. *Russell* (1966) 384 U.S. 11 [16 L.Ed.2d 321, 86 S.Ct. 1238]; *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961]; *Monroe* v.

---

[3]District defendants hired private counsel despite the fact that the county counsel is required to represent them at no charge. (Ed. Code, § 35203.) They opposed plaintiff's request for a preliminary injunction on the ground that "plaintiff has not shown that any irreparable harm will occur to her by failing to issue an injunction at this time." The district asserted that it was "required by law to follow the provisions of the Education Code of the State of California." At no point did the school district defendants concede the unconstitutionality of the oath requirement, despite the concession to that effect by the State Board of Education.

[4]Plaintiff did not seek fees against the other defendants.

*Trustees of the California State Colleges* (1971) 6 Cal.3d 399 [99 Cal.Rptr. 129, 491 P.2d 1105].)

The court awarded attorney's fees under both Code of Civil Procedure section 1021.5[5] and 42 United States Code section 1988,[6] the Civil Rights Attorney's Fees Award Act of 1976. The court held that plaintiff was entitled to fees pursuant to section 1021.5: "The Richmond Unified School District opposes an award of attorney's fees on the ground that this judgment will not confer a benefit on a large class of persons. It is the opinion of this court that a class of sufficient size has been indicated, since this defendant promises to enforce the code sections for an indefinite future if not restrained."

The court also held that an award of fees was appropriate under section 1988, citing *Perez* v. *University of Puerto Rico* (1st Cir. 1979) 600 F.2d 1, 2, for the proposition that section 1988 was concerned with enforcement of the civil rights of individual plaintiffs as well as of the public.

On June 9, 1981, judgment was entered declaring the statutes unconstitutional, enjoining their enforcement by the district, and requiring the state defendants to inform all school and community college districts that the statutes are unconstitutional and that each such district must promulgate regulations forbidding their enforcement. The district defendants appeal only that portion of the judgment awarding attorney's fees to the plaintiff.

DISCUSSION

I.

Initially, appellants contend that they had no choice but to enforce the loyalty oath provisions of the Education Code, arguing that the California Constitution, article III, section 3.5, precluded them from declaring the

---

[5]Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

[6]42 United States Code section 1988, provides in pertinent part that "In any action or proceeding to enforce [specified civil rights statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

loyalty oath sections unconstitutional prior to an appellate court determination to that effect.[7]

We agree with the trial court and with plaintiff that the former Education Code sections requiring the non-Communist loyalty oaths were patently unconstitutional following decisions rendered long ago by both state and federal authorities. (See, e.g. *Wieman* v. *Updegraff* (1952) 344 U.S. 183 [97 L.Ed. 216, 73 S.Ct. 215]; *Keyishian* v. *Board of Regents, supra,* 385 U.S. 589; *Elfbrandt* v. *Russell, supra,* 384 U.S. 11; *Vogel* v. *County of Los Angeles, supra,* 68 Cal.2d 18; *Monroe* v. *Trustees of California State College, supra,* 6 Cal.3d 399, 412.) This conclusion, which it is rather distressing to be required to reiterate at this late date, is certainly no surprise to the overwhelming number of school districts in California, which prior to this action did not comply with the statutes, nor to the State Board of Education, which did not enforce them.

Moreover, even if we assume appellants genuinely believed the loyalty oath statutes had not effectively been determined to be unconstitutional by the appellate courts and that as a result appellants were precluded by article III, section 3.5, from refusing to enforce them, they still would not be insulated against an award of attorney's fees.

In *Rosenfeld* v. *Southern Pacific Co.* (9th Cir. 1975) 519 F.2d 527, the Ninth Circuit Court of Appeals rejected a similar argument with respect to the attorney's fees provision of title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e et seq.[8] There defendants argued that they were merely following federal regulations to the effect that state laws prohibiting employment of women in jobs involving lifting of weights greater than *stipulated in the statute* would not be deemed in conflict with title VII. The court rejected this argument and also a concomitant contention that the award of attorney's fees was an abuse of discretion as the defendants had simply *obeyed a state statute* that was valid when they acted. (*Id.,* at p. 530.) In so doing, the court relied upon the "clear purpose of Congress

---

[7]California Constitution, article III, section 3.5, provides that: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional; [¶] (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

[8]Section 706(k) of title VII, 42 United States Code § 2000e-5(k), which is analogous to the federal fee statute at issue here, provides that in actions under the act "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."

in authorizing the award of attorneys' fees." (*Id.*, at p. 529.) As the court emphasized, "[t]he purpose of the award is not simply to punish the defendants but to encourage individuals injured by discrimination to seek judicial relief, and thus secure enforcement of the Act. [Citation.] Trial courts have uniformly rejected the suggestion that they should decline to award attorney's fees because the defendant relied upon state law. [Citations.]" (*Id.*, at p. 530.)[9] (See also *Committee to Defend Reproductive Rights* v. *Cory* (1982) 132 Cal.App.3d 852 [183 Cal.Rptr. 475].)[10]

█ These same considerations underlie both the state private attorney general statute codified in Code of Civil Procedure section 1021.5 and the federal civil rights attorney's fees provision of 42 United States Code section 1988. Cases interpreting section 1988 recognize that "the award of counsel fees is not intended to punish the defendant in any way. Rather, it is to permit and encourage plaintiffs to enforce their civil rights." (*Perez* v. *University of Puerto Rico, supra,* 600 F.2d 1, 2; *International Oceanic Enterprises, Inc.* v. *Menton* (5th Cir. 1980) 614 F.2d 502, 503; *Johnson* v. *State of Miss.* (5th Cir. 1979) 606 F.2d 635, 637.) █ Similarly the "fundamental objective" of the private attorney general doctrine of attorney's fees codified in section 1021.5 is " 'to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens.' " (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 43 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) █ Thus, there is no "good faith exception" to either the state attorney's fees statute or its federal counterpart.

## II.

█ Appellants' next contention may be quickly disposed of as it is simply a variation of the one we have just rejected. As appellants correctly point out, federal attorney's fee statutes similar to section 1988 have been

---

[9]The court also stated that a defense based upon reliance on state law might affect the proper amount of the fee, but would not affect the propriety of awarding the plaintiff proper attorney's fees. (*Ibid.*) This view has not been adopted by any California court that has interpreted Code of Civil Procedure section 1021.5. (See, e.g. *Serrano* v. *Unruh* (1982) 32 Cal.3d 621 [186 Cal.Rptr. 754, 652 P.2d 985].)

[10]As respondent points out, the Court of Appeal in *Committee to Defend Reproductive Rights* v. *Cory, supra,* awarded attorney's fees under section 1021.5 in a case where the defendants claimed that Article III, section 3.5, precluded them from refusing to enforce the statute. Although the court did not expressly address the issue, its award of fees is clearly consistent with the conclusion that the erroneous but good faith belief of a government official or agency that an unconstitutional statute must be enforced is irrelevant to the propriety of a fee award pursuant to section 1021.5.

interpreted to mean that the prevailing party is ordinarily entitled to a full fee award "unless special circumstances would render such an award unjust." (*Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1266, 88 S.Ct. 964] [construing the fee provision of tit. II of the Civil Rights Act of 1964]; see also the discussion of the federal principle in *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, 633, and cases there cited.) Appellants claim, in effect, that their own good faith is the sort of "special circumstance" that renders the award of attorney's fees unjust in this case. We reject this argument because it is of course simply another way of asserting the good faith exception to the statutory doctrine of attorney's fees that, as previously explained, is inconsistent with the doctrine and has never been judicially adopted. (See *Johnson* v. *State of Miss.* (5th Cir. 1979) 606 F.2d 635, 637; and *Rosenfeld* v. *Southern Pacific Co., supra,* 519 F.2d 527, 530.)

The fact that the fee award must be paid from the limited budget of the district and that the financial burden will therefore fall upon the taxpayers also does not constitute a special circumstance rendering the fee unjust (see *Johnson* v. *State of Miss., supra,* 606 F.2d 635), nor does it matter that plaintiff was represented by public interest attorneys and may not herself have been required to expend money in pursuing the litigation. (See *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, 642; and *Serrano* v. *Priest, supra,* 20 Cal.3d 25, 47-48; cf. *International Oceanic Enterprises, Inc.* v. *Menton, supra,* 614 F.2d 502, 503 [plaintiff's ability to pay is not a special circumstance sufficient to render an award under § 1988 unjust].) Similarly, the district's contention that it did not "actively" assert the statute's constitutionality at any point in the litigation below is also insufficient to rise to the level of a "special circumstance" exception to section 1988. This argument is also disingenuous, because the district vigorously opposed the relief sought by plaintiff in any event.

Thus, for purposes of section 1988, we find no "special circumstances" exempting appellant from the provisions of that section.

### III.

Plaintiff is also and independently entitled to attorney's fees under section 1021.5 of the Code of Civil Procedure. The history and purpose of that section have been discussed at length in numerous California cases, including *Save El Toro Assn.* v. *Days* (1979) 98 Cal.App.3d 544 [159 Cal.Rptr. 577]; *Woodland Hills Residents' Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917; *Baggett* v. *Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874]; and *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829 [160 Cal.Rptr. 465]. As recently reiterated by the Supreme Court in

*Baggett* v. *Gates, supra,* "section 1021.5 provides for court-awarded attorney fees under a private attorney general theory. (See also *Serrano* v. *Priest* (1977) 20 Cal.3d 25 . . . .) As this court explained in *Woodland Hills Residents' Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 . . . , the private attorney general doctrine 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions . . . . [W]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]' ▮ [¶] The decision as to whether an award of attorney fees is warranted rests initially with the trial court. (*Id.,* at pp. 938, 940-941, 942.) '[U]tilizing its traditional equitable discretion,' that court 'must realistically assess the litigation and determine, from a practical perspective' (*id.,* at p. 938) whether or not the statutory criteria have been met. In this case, the trial court had to evaluate whether plaintiffs' action: (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter. (See Code Civ. Proc., § 1021.5; *Woodland Hills, supra,* at pp. 935-942.) (Fn. omitted.)" (32 Cal.3d at p. 142.) (See also, *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704].)

The trial court concluded that the statutory criteria were met by plaintiff in this case.

▮ "Where, as here, a trial court has discretionary power to decide an issue, its decision will be reversed only if there has been a prejudicial abuse of discretion. ' "To be entitled to relief on appeal . . . it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . ." ' (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 242, p. 4234, citations omitted.) However, 'discretion may not be exercised whimsically and, accordingly, reversal is appropriate "where no reasonable basis for the action is shown." [Citation.]' (*Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829, 835-837. . . ; see generally, 6 Witkin, Cal. Procedure, *supra,* § 244, pp. 4235-4236.)" (*Baggett* v. *Gates, supra,* 32 Cal.3d at pp. 142-143; see *Rich* v. *City of Benecia* (1979) 98 Cal.App.3d 428, 435 [159 Cal.Rptr. 473].)

▮ Appellants contend that under the provisions of section 1021.5, there is no substantial benefit to a large number of persons or to the public in general. We believe, as did the trial court, that the benefits of plaintiff's victory are substantial. Loyalty oath requirements have been characterized as "threats to academic freedom." (*White* v. *Davis* (1975) 13 Cal.3d 757,

769 [120 Cal.Rptr. 94, 533 P.2d 222].) They are "particularly pernicious," the courts have held, where, as was apparently the case here, no opportunity is afforded one who declines to take the oath to explain that his or her refusal is prompted by conscientious scruples and noble motives. The assumption of "guilt by association" of oaths of this type was automatic and irrefutable. (See *Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d 399, 414.)

The alternative thrust of appellants' argument is that even if plaintiff's victory resulted in some benefit, such benefit was not enjoyed by the public generally or by "a large number of persons," as required by the statute. We disagree.

Appellants' comparison of the loyalty oath provisions of the Education Code that are at issue here with the curfew ordinance addressed in *Naprstek* v. *City of Norwich* (N.D.N.Y. 1977) 433 F.Supp. 1369 is not persuasive. In that case the district court refused to grant attorney's fees under 42 United States Code section 1988 despite a finding that the ordinance at issue was unconstitutionally vague and overbroad. The court characterized the measure as "an antiquated, poorly-drafted, rarely-enforced juvenile curfew ordinance." (*Id.,* at p. 1370.) The court also felt it significant that the city council nullified the ordinance prior to the Court of Appeal decision holding it void. (*Id.,* at p. 1371.) Unlike *Naprastek,* the statutes challenged in this case were being actively and consistently enforced by appellants and, but for the decision of the trial court, would continue to have been so enforced. For reasons set forth by our Supreme Court in *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311, 318-320, which are unnecessary to repeat, we therefore conclude that it was within the court's discretion to determine that the instant litigation resulted in a significant benefit to a sufficiently wide segment of the public to come within the provisions of section 1021.5.[11]

Appellants next contend that plaintiff has failed to meet the second criterion of section 1021.5 which is that "the necessity and financial burden of private enforcement are such as to make the award appropriate." The California Supreme Court in *Woodland Hills* described the type of financial burden contemplated. ■ Quoting *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71], the court explained: "'An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out

[11]This conclusion is not essential for plaintiff to prevail because, as pointed out by the trial court in its memorandum of decision, federal law does not require that a large class be benefited in order to grant an award of attorney's fees to the "prevailing party" under section 1988. (See *Perez* v. *University of Puerto Rico, supra,* 600 F.2d 1, 2.)

of proportion to his individual stake in the matter." [Citation.]' " (23 Cal.3d 917, 941.) ■■ Plaintiff clearly meets this test, as she had already signed the loyalty oath and had been hired by the district at the time she initiated this litigation. Clearly plaintiff's attorneys took legal action to prevent the district from administering and enforcing loyalty oaths in the future. This is not a case where the public value of plaintiff's action was wholly coincidental to the attainment of her personal goals. (Compare *Marini* v. *Municipal Court, supra,* 99 Cal.App.3d 829, 838.) Plaintiff clearly acted as a private attorney general in the purest sense of the term. (See *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311, 319-320 and fn. 7.)

Appellants argue that the instant lawsuit presented no great burden of private enforcement as the single issue involved was straightforward, the litigation was not complex or time consuming, and plaintiff was represented by public interest attorneys and thus did not face the burden of payment for the litigation. ■■ ■■ ■■■ *Serrano* v. *Priest, supra,* 20 Cal.3d 25, established that "the eligibility of plaintiffs' attorneys for the award of fees granted . . . is not affected under the 'private attorney general' theory by the fact that plaintiffs are under no obligation to pay fees to their attorneys, or the further fact that plaintiffs' attorneys received funding from charitable or public sources." (At pp. 47-48.)[12] ■■ The issue of the constitutionality of the statute may have been relatively simple, but such simplicity does not eliminate the economic burden of private enforcement. (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 321.) ■■ The simplicity or complexity of the issues litigated relates to the determination of the proper amount of the award, not the propriety of an award.

We therefore conclude that the trial court acted within the limits of its discretion in awarding attorney's fees to plaintiff's counsel pursuant to both Code of Civil Procedure section 1021.5 and 42 United States Code section 1988.

■■ The sole remaining issue is the propriety of the award of fees to plaintiff's counsel for the time spent protecting their fee award on appeal. The recent case of *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, appears to us dispositive. "We hold . . . that, absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (*Id.,* at p. 639.) The Supreme Court explicitly acknowledged in that case that it was following the lead of federal author-

---

[12]The same principle applies under federal law to attorney's fees statutes such as 42 United States Code section 1988. It is clear that a plaintiff's ability to pay is not a special circumstance sufficient to render an award unjust. (*International Oceanic Enterprises, Inc.* v. *Menton, supra,* 614 F.2d 502, 503.)

ities construing federal fee statutes to ordinarily require a full fee award. (*Id.*, at p. 633.)

The judgment is affirmed. Plaintiffs are awarded reasonable attorney's fees in connection with prosecuting this appeal. The matter is remanded to the superior court for determination of the amount of the fee award both in the action below and on appeal and for further proceedings consistent with the views expressed in this opinion.

Miller, J., and Smith, J., concurred.