[No. G005284. Fourth Dist., Div. Three. Sept. 30, 1988.]

DEBORHA PHIPPS et al., Plaintiffs and Respondents, v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

1112

**COUNSEL**

Rutan & Tucker, David C. Larsen and Andrea R. Calem for Defendant and Appellant.

Merwin Auslander for Plaintiffs and Respondents.

**OPINION**

**SONENSHINE, Acting P. J.**—Saddleback Valley Unified School District challenges the trial court's issuance of a permanent injunction and award of attorney fees to Deborha Phipps in a matter involving her nephew Channon Phipps's exclusion from school after testing positive for the Acquired Immune Deficiency Syndrome (AIDS) virus. We affirm.

I.

A test performed in August 1985 revealed 11-year-old Channon Phipps, a hemophiliac, had been exposed to the AIDS virus. After advising school

officials of the test results, Deborha Phipps, Channon's aunt and, since 1976, his legal guardian, communicated with Dr. Joseph Platow, assistant superintendent for the school district. Platow informed her the district was in the process of "formulating a policy" on the subject and instructed her not to enroll Channon in school. It was agreed Channon would, in the meantime, study at home.

In late September the school district provided Channon with a home computer and some software. The district had trouble finding a suitable tutor, however. And when the home tutorial program finally got under way in October, it was limited to three to four hours a week. This, in Phipps's opinion, was inadequate; she wanted Channon to attend regular classes. She repeatedly made her wishes known, but, on each occasion, Platow asserted Channon could not attend school until a policy was formulated.[1] The district maintains its officials knew nothing of Phipps's dissatisfaction with the home study arrangements until after her lawsuit was filed and they were contacted by the media.

The complaint, filed November 26, alleged Channon had been expelled from school and, as a result, was "suffering and will continue to suffer irreparable harm and damage by not being given the education and enjoying the educational facilities uniquely available at his said school and thereby causing him irreparable harm." It sought both preliminary and permanent injunctions "allowing [Channon] the full use of the premises and educational facilities to which he otherwise would be entitled." It also sought attorney fees. The district was not served until December 10; however, its representatives learned of the lawsuit through media coverage.

On December 13 Phipps's lawyer sent a letter to the school district. It expressed Phipps's eagerness to resolve the matter but noted she "ha[d] no other avenue open but to go forward with her litigation and attempt to obtain the education to which Channon Phipps is entitled."

Counsel for the district responded on January 21, 1986. He indicated Phipps had stated a preference for home teaching when Channon first enrolled in the school district—even before he tested positive for the AIDS virus. He also noted the letter from Phipps's lawyer had been reviewed by

---

[1] In a declaration dated December 24, 1985, Phipps alleges that in an October 29, 1985, telephone conversation with Platow, she demanded that Channon either receive tutoring equivalent to the normal curriculum or be allowed to attend school; Platow replied school attendance would simply not be permitted. In a subsequent declaration prepared in November 1986, Phipps said she told Platow on October 28, 1985, that a lawsuit would be filed if Channon was not immediately allowed to attend school.

the board of trustees at its January 14 meeting and a proposed policy relating to AIDS would be presented to the board on January 28—a policy "drafted after careful study and consideration by District staff and after soliciting input from medical experts as well as parents and teachers." Further, counsel noted the board of trustees had, on January 16, requested verification from Channon's physician and the county health officer that "Channon's attendance at school poses no risk that students or staff members will contract AIDS as a result of their contact with Channon." The letter concluded: "The District is more than willing and eager to discuss the issues with you and your client at any time, with the purpose of ensuring that the educational needs and safety of all children, including Channon, are met. A clear statement of the guardian's desires in this matter would be helpful."

Phipps had meanwhile filed a motion for a temporary restraining order and preliminary injunction seeking Channon's admittance to school "as a full-time student carrying the customary curriculum . . . ." The motion also sought attorney fees pursuant to Civil Code section 54.3[2] and Code of Civil Procedure section 1021.5.

A hearing scheduled for February 5 was continued on the court's motion to enable the county health officer to examine Channon. On February 20 the court ordered the school district "to admit [Channon] to attendance in a regular school within its district, subject to his medical condition being re-evaluated every six months or sooner if his guardian or school officials have concerns about any change in his behavior or physical condition. The first re-evaluation shall take place on or before August 1, 1986." The court had considered the recommendation of Thomas J. Prendergast, Jr., M.D., Director, Epidemiology & Disease Control for the County of Orange, who found Channon "pose[d] no danger to other students, to faculty personnel or to himself in the customary or usual school setting."[3] The court's formal order dated February 28 is silent as to Phipps's request for attorney fees.

---

[2] Civil Code section 54.3 authorizes an award of damages and attorney fees to any blind, visually handicapped, deaf or physically disabled person who is prevented from using and enjoying the streets, highways, sidewalks, public buildings, public facilities and other public places.

[3] See *Chalk* v. *U.S. Dist. Court Cent. Dist. of California* (9th Cir. 1988) 840 F.2d 701 where the court, in reversing the district court's denial of injunctive relief to a school teacher afflicted with AIDS, noted the risk of transmission in the classroom setting had already been addressed by the Surgeon General: " 'None of the identified cases of AIDS in the United States are known or are suspected to have been transmitted from one child to another in school, day care or foster care settings. Transmission would necessitate exposure of open cuts to the blood or other body fluids of the infected child, a highly unlikely occurrence. Even then, routine safety procedures for handling blood or other body fluids . . . would be effective in preventing transmission from children with AIDS to other children in

The district's policy on AIDS and infectious diseases became effective five days after the hearing. It provided, in pertinent part: "Any student suspected of having a recognized contagious or infectious disease shall be excluded, including those exempt from assessments and testing, from school by school authorities. When requested to do so in writing by the student's parents or guardians, the District may permit a student with what would normally be classified as a contagious or infectious disease, or Acquired Immune Deficiency Syndrome [or those whose blood tests are positive to the A.I.D.S. (HTLV-III/LAV) antibodies] to attend regular classes contingent upon an evaluation of the situation, conducted in accordance with administrative regulations, and with the unanimous written agreement of the student's physician, the County Public Health Department and the District's appointed medical consultant(s) that such admittance poses no risk to the student with the disease or A.I.D.S. (or student with a blood test positive to the A.I.D.S. antibodies), or to his/her classmates, or to school personnel. The final decision rests with the Board of Education." The applicable administrative regulation spells out the procedure to be followed before the student may be allowed to attend regular classes.

The matter proceeded to trial on November 6, 1986. Two issues were presented: the propriety of a permanent injunction and Phipps's request for attorney fees pursuant to Code of Civil Procedure section 1021.5. The parties stipulated the court's decision would be based on all matters of record, including declarations and trial briefs.

The court took the matter under submission, and on November 17 rendered the following ruling: "Judgment for plaintiffs granting permanent injunction against the Saddleback Valley Unified School District ordering that Channon Phipps be allowed to remain in school in regular attendance, subject to appropriate medical exam at least every six months. Further, plaintiff is ordered to advise the defendant of any known changes in Channon Phipps' physical condition. Pursuant to [section] 1021.5, plaintiffs to recover attorney fees from defendant in the amount of $10,000."

A statement of decision was filed February 24, 1987. The court essentially found Channon had not been expelled from school but the district had prevented him from attending classes, Phipps had requested home teaching, the district was justified in requiring verification Channon's school attendance posed no risk to others, and the district had unreasonably delayed formulating its policy. With respect to its decision to issue a permanent injunction, the court found: "At the time of trial, there was no threatened

---

school. . . . Casual social contact between children and persons infected with the AIDS virus is not dangerous.' " (*Id.,* at p. 706.)

unlawful act on the part of the District to improperly exclude Channon Phipps from attendance. [¶] A permanent injunction would not interfere with the District's carrying out its policies and regulations. [¶] Whether or not the District School Board will correctly perform its duties or abuse its discretion in the future is a matter of speculation and the Court will not so speculate." Finally, the court found, with regard to its award of attorney fees: "This proceeding involves enforcement of an important right affecting the public interest. [¶] The purpose of this action has conferred on the general public or a large class of persons a significant benefit. [¶] The necessity and financial burden of the private enforcement of this matter makes an award of attorney's fees appropriate."

The school district insists the trial court abused its discretion in issuing a permanent injunction. It points out Channon had been attending school since February without incident; thus, an injunction was unnecessary. Alternatively, it contends that even if the injunction was proper and a basis for attorney fees therefore existed, an award is not warranted because this is not a situation contemplated by the provisions of Code of Civil Procedure section 1021.5.

## II.

"Injunction 'is an extraordinary power, and is to be exercised always with great caution' and the power rarely, if ever, should be exercised in a doubtful case. [Citations.] If, therefore, at the time of the order or judgment . . . there is no reasonable probability that past acts complained of will recur, injunctive relief will be denied. Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur. [Citations.] A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future. [Citations.]" (*Mallon* v. *City of Long Beach* (1958) 164 Cal.App.2d 178, 190 [330 P.2d 423].)

In *Mallon,* the need for a permanent injunction was eliminated when the city filed an amended answer stating " 'we will not do it again and we need no further court order to prevent us from doing it in the future.' " (*Id.,* at p. 187.) The appellate court affirmed the trial court's ruling, stating: "This 'change of circumstances' resulting in the city's present attitude . . . completely warranted the exercise of the trial court's discretion in denying injunctive relief." (*Ibid.*) Thus, there was simply no necessity for the injunction.

■ Relying on *Mallon,* the school district maintains a permanent injunction was unwarranted. It takes the position the preliminary injunction was issued solely "to expedite the County health officer's examination of Channon," and that Channon would have been returned to school, even without the injunction, once the board's policy was effectuated. Further, it asserts circumstances had changed by the time of the hearing on the permanent injunction so as to obviate the threat of any unlawful act: Channon was in school, the board's policy regarding AIDS was being implemented, and there was no evidence any wrongful conduct which purportedly took place in the past was likely to recur. It points to the court's findings "[a]t the time of trial, there was no threatened unlawful act on the part of the District to improperly exclude Channon Phipps from attendance," and "[w]hether or not the District School Board will correctly perform its duties or abuse its discretion in the future is a matter of speculation and the Court will not so speculate."

Phipps, however, asserts the holding in *Mallon* was premised on the city's assertion of its "good faith" intent to voluntarily abandon its prior conduct and the fact the assertion was made in the city's amended answer. But here, she argues, the school district's actions were different. At the time of trial, the district held fast to its earlier position AIDS was a contagious or infectious disease. And the court found the district did not act reasonably "for reasons which include the failure to formulate a policy for a period in excess of five months."

Phipps points out a number of cases decided since *Mallon* refer to this "good faith" requirement. For example, in *People* v. *National Association of Realtors* (1981) 120 Cal.App.3d 459 [174 Cal.Rptr. 728, 22 A.L.R.4th 79], the court stated: "[W]here the injunction is sought solely to prevent recurrence of proscribed conduct which has, in *good faith* been discontinued, there is no equitable reason for an injunction. [Citations.]" (*Id.,* at p. 476, italics added.) In *Lee* v. *Gates* (1983) 141 Cal.App.3d 989 [190 Cal.Rptr. 682], the court noted "an injunction is no longer necessary to prevent in the future that which in *good faith* has been discontinued, in the absence of any evidence that the acts are likely to be repeated . . . . Injunctive relief is ordered only where there is evidence that the acts will probably recur. [Citation.]" (*Id.,* at p. 993, italics added.) Even Witkin, citing *Mallon,* states: "An injunction is no longer necessary when the defendant *voluntarily* discontinues the wrongful conduct." (6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 281, p. 240, italics added.)

Phipps's position is well taken. The district did not decide to abandon its closed-door policy and allow Channon to attend regular classes voluntarily.

Issuance of the preliminary injunction played a crucial role. The district, though faced with an extremely delicate situation, had acted unreasonably in delaying the formulation of its policy, at Channon's expense. And while Channon was back in school by the time of trial, there was no guarantee the district would not change its tune. Simply stated, the record suggests Channon's attendance was permitted solely because it was mandated by the preliminary injunction.

Nor is there merit to the district's contention the permanent injunction impedes the implementation of its duties. We fail to see how Channon's court-ordered attendance "interferes with the flexible policy the District has worked out, which . . . allows it to review and analyze each case utilizing a team approach to the problem." Moreover, it is questionable whether the school district would have even appealed the injunction had attorney fees not been awarded. Finally, the district, if content with the mandates of the preliminary injunction, could have moved to dismiss the action, prior to trial, on the ground judicial intervention was no longer required.[4]

We are not unmindful of the court's finding there existed, at the time of trial, no threat to exclude Channon from school. In light of the gravity of the situation, however, and the impact the disease has had and continues to have on the lives of all of us,[5] this finding is not necessarily inconsistent with the rationale for granting injunctive relief. ■ As the *Mallon* court observed: " 'The appropriateness of injunction is to be determined as of the time of the order or judgment *unless special circumstances otherwise require.*' [Citation.]" (*Mallon* v. *City of Long Beach, supra,* 164 Cal.App.2d at p. 188, italics added.)

### III.

■ Code of Civil Procedure section 1021.5 is a codification of the private attorney general doctrine and authorizes an award of attorney fees to the successful party "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c)

---

[4] See *Thomas* v. *Atascadero Unified School Dist.* (C.D.Cal. 1987) 662 F.Supp. 376, 378, where the parties, following entry of a preliminary injunction mandating attendance in a kindergarten class of a five-year-old boy infected with the AIDS virus, stipulated to entry of a permanent injunction.

[5] The Legislature has recognized AIDS as "a serious disease threatening the lives of men and women of all segments of society." (Health & Saf. Code, § 195, subd. (a).)

such fees should not in the interest of justice be paid out of the recovery, if any." The statute's purpose is "to encourage the presentation of meritorious claims affecting large numbers of people by providing successful litigants attorneys fees incurred in public interest lawsuits. [Citation.]" (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 111 [212 Cal.Rptr. 485].) The trial court has discretion to determine the existence of the requisite elements. (*Id.,* at p. 110.)

█ The district argues the fee award was an abuse of discretion because none of the statutory requirements were satisfied.[6] First, it contends an important right affecting the public interest was not enforced by Phipps's lawsuit. It acknowledges the significance of the right to education but argues the litigation did not enforce that right since Channon was never prevented from obtaining an education. It points to the court's finding Channon was not expelled from school, and also cites Education Code section 51800 as authority for home teaching as an alternative means of education. We are not satisfied, however, that home teaching is the equivalent of classroom instruction; thus, Phipps's lawsuit *did* involve the enforcement of an important right.

Next, the district maintains a benefit was not conferred on the general public or a large class of persons, as mandated by the statute. It asserts Phipps "specifically *did not seek* to vindicate the rights of a large class or group of people," and, in fact, argued *against* the intervention of the Hemophiliac Foundation.[7] It contends Phipps cannot have it both ways: "a narrowly-framed, individualized benefit with no bearing on any class of persons," for purposes of trial, and "a broad, class-wide benefit," for purposes of obtaining attorney fees.

The issuance of the preliminary injunction served as a stimulus for the district to finalize its policy on AIDS and infectious diseases. Moreover, it highlighted, for the public's benefit, the severity of the disease and the magnitude of its impact. And while the permanent injunction alone does not pave the way for every student in Channon's position to attend classes, the lawsuit itself was instrumental in prodding the district to address the issue, to effectuate an appropriate policy and to implement that policy without impairing the rights of its students. █ As stated in *Maria P.* v.

---

[6] The fourth element is, of course, inapplicable because there was no monetary recovery.

[7] In opposing the motion to intervene, Phipps's lawyer acknowledged it was plaintiff's position "there is no constitutional issue at this point. It is a question of fact, and the plaintiff's interest is to keep that issue as sharp and as narrowly defined as possible before this court rather than have this blunted or blurred by what we consider to be extraneous issues. [¶] If Channon Phipps has a communicable or infectious disease he does not belong in this school. We admit that. That's the question the court must decide . . . ."

*Riles* (1987) 43 Cal.3d 1281 [240 Cal.Rptr. 872, 743 P.2d 932]: "An award of attorney fees under section 1021.5 is appropriate when a plaintiff's lawsuit ' "was a *catalyst* motivating defendants to provide the primary relief sought," ' or when plaintiff vindicates an important right ' "by activating defendants to modify their behavior." ' [Citations.]" (*Id.,* at pp. 1291-1292.)

The situation is not unlike that in *Slayton* v. *Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538 [207 Cal.Rptr. 705], where a fee award was upheld. The appellants in that case, consisting of 12 parents and their children, obtained a peremptory writ prohibiting the school district from engaging in specified conduct in violation of certain statutory and constitutional rights. The trial court refused to award attorney fees under section 1021.5 but the appellate court reversed.

The court rejected the respondents' argument that a significant benefit had not been conferred on the general public or a large class of persons: "Even if the impact of this lawsuit were limited to the present Philadelphia School students and their parents, the litigation still benefited 'a large class of persons.' However, the impact of petitioners' action is far greater than respondents acknowledge. All future Philadelphia School students and their parents will benefit from respondents' mandatory compliance with the trial court's order. The issuance of the peremptory writ imposes an obligation on the school district which is not limited to the present time; rather, the obligation on respondents is a continuing one." (*Id.,* at p. 552.)

*San Francisco Unified School Dist.* v. *State of California* (1982) 131 Cal.App.3d 54, a case the district contends is "strikingly similar" to ours, does not help its position. There, a request for attorney fees was denied on the ground the litigation did not result in the enforcement of an important right affecting the public interest. The appellant, an emotionally handicapped child, was successful in procuring an individualized education program; however, no one else was affected by the outcome. In our case, it is conceivable that other individuals, in the Saddleback Valley Unified School District as well as in other school districts, will be affected by the outcome.

Nor do the present circumstances resemble those in *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158 or *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829 [160 Cal.Rptr. 465], both involving a denial of fees. Fees were denied in *Pacific Legal Foundation* because "[t]he decision vindicated only the rights of the owners of a single parcel of property. It in no way represents . . . a ringing declaration of the rights of all or most landowners in the coastal zone . . . ." (*Pacific Legal Founda-*

*tion, supra,* 33 Cal.3d at p. 167.)[8] In *Marini,* the moving party was awarded fees after obtaining a writ to determine whether a local diversion and treatment program for drunk drivers had been preempted by statute. But the appellate court reversed, finding there was no reasonable basis for the award: "Any public value derived from the result respondent obtained was, so far as the record shows, wholly coincidental to the attainment of respondent's personal goals." (*Marini* v. *Municipal Court, supra,* 99 Cal.App.3d at p. 837.)

Finally, the district contends the lawsuit did not place a burden on Phipps which was out of proportion to her individual stake in the matter. ■ This statutory requirement has been interpreted to mean fees are warranted only when " 'the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 941.) In other words, "attorneys fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action. [Citation.]" (*Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at p. 114.)

■ The district contends Phipps's refusal to accept financial assistance from the Hemophiliac Foundation "underscores the narrow focus of the litigation below and suggests that [Phipps] believed the financial burden of the litigation to be appropriate to the attainment of her goals." True, Phipps opposed intervention by the Hemophiliac Foundation; however, we do not know if she affirmatively rejected financial aid.

As for opposing the foundation's intervention, we fail to see why Phipps's lawyer's decision to keep the issue "as narrowly defined as possible" (see fn. 7, *ante*) should have any bearing on the issue now before us. "Since [Phipps] had no pecuniary interest in the outcome of the litigation, 'the financial burden in this case [was] such that an attorney fee award [was] appropriate in order to assure the effectuation of an important public policy.' [Citation.]" (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321.) The fact Phipps had a personal stake in the outcome of the litigation is irrelevant. ■ "As the statute makes clear, subdivision (b) of section 1021.5 focuses not on plaintiffs' abstract personal stake, but on the financial incentives and

---

[8] Cf. *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848, 867 [223 Cal.Rptr. 846], footnote 12, where the court upheld a fee award because, in contrast with *Pacific Legal Foundation,* "the benefits of defendants' victory will be shared by any person contemplating political protest by picketing."

burdens related to bringing suit. Indeed, in the absence of some concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action. [Citation.]" (*Ibid.,* fn. 11.)

The trial judge acknowledged his decision regarding attorney fees was not an easy one: "I think the adoption of [the district's] policy and the moving of it off of dead center was an important benefit conferred on a group of persons, not only those who may be A.I.D.S. positive, which is apparently a growing number, but also on those who may have those A.I.D.S.-positive persons in their schools, or enrolled within their schools. And I looked to all of those factors, and others as well, in reaching the position that this was an appropriate case in the awarding of attorney's fees. [¶] That was a difficult call for the court."

Our task is not as difficult. Reversal is warranted "[o]nly if there has been an abuse of discretion amounting to a manifest miscarriage of justice or when the trial court has awarded fees where there is no reasonable basis to do so . . . . [Citation.]" (*Beach Colony II* v. *California Coastal Com., supra,* 166 Cal.App.3d at p. 113.) The district has failed to demonstrate either.[9]

Judgment affirmed. Respondents to receive costs on appeal.[10]

Crosby, J., and Wallin, J., concurred.

---

[9] The district also argues Phipps did not comply with the judicially created exhaustion requirement. Citing *Grimsley* v. *Board of Supervisors* (1985) 169 Cal.App.3d 960 [213 Cal.Rptr. 108], it argues she made no effort, short of litigation, to resolve the matter. It takes the position Phipps might have been accommodated, without the expense and inconvenience of litigation, had she been more assertive as to her desire for more home teaching or to return Channon to the classroom.

Phipps counters she *did* attempt to secure Channon's admittance at school without resorting to litigation. But her repeated requests were consistently denied.

[10] Phipps is also entitled to attorney fees for the time spent in protecting her fee award on appeal. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 639 [186 Cal.Rptr. 754, 652 P.2d 985]; *Coalition for Economic Survival* v. *Deukmejian* (1985) 171 Cal.App.3d 954, 967, fn. 7 [217 Cal.Rptr. 621].) It is for the trial court to determine the appropriate amount.