Filed 9/28/23  Dreisbach Enterprises v. Pacific Coast Container CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DREISBACH ENTERPRISES, INC. et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>PACIFIC COAST CONTAINER, INC.,<br><br>        Defendant and Respondent. | A166162<br><br>(Alameda County Super. Ct. No. RG18931876) |

Plaintiffs Dreisbach Enterprises, Inc. ("Dreisbach"), Coolport Management, LLC ("Coolport Management"), Cool Port Oakland, LLC ("Cool Port Oakland"), and Cool Port Oakland Freight, LLC ("Cool Port Oakland Freight") appeal after the trial court granted the motion of defendant Pacific Coast Container, Inc. ("PCC") to dissolve a preliminary injunction.  The preliminary injunction had enjoined PCC from engaging in alleged unlawful business practices related to the drayage business, specifically, operating overweight trucks in the Port of Oakland in violation of state and municipal law.  The court dissolved the injunction after finding:  (1) Dreisbach was unlikely to succeed on the merits; and (2) there was no immediate threat of irreparable harm to Dreisbach.  Plaintiffs contend the court erred in dissolving the injunction.  We agree and so reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Proceedings Leading to the Preliminary Injunction

In December 2018, Dreisbach filed a complaint against PCC alleging a single cause of action for unfair business practices pursuant to the unfair competition law (UCL) (Bus. & Prof. Code, § 17200). Dreisbach, who at the time was the only named plaintiff, alleged that PCC, a direct competitor in the Port of Oakland drayage business, was operating trucks in violation of state law limiting gross truck and cargo weight to 80,000 pounds (Veh. Code, §§ 35550–35558). Dreisbach also alleged that certain ordinances allowed gross vehicle weights of up to 95,000 pounds on a designated " 'Heavy Weight Corridor' " in the Port of Oakland (City of Oakland Ordinance No. 11568; Port of Oakland Ordinance No. 2183), but that PCC failed to obtain the requisite permit to operate under this exception and failed to abide by specific rules for the exception to apply, such as using a three-axle chassis. Dreisbach claimed that by avoiding the expense of complying with the law, PCC undercut competitors like Dreisbach and undermined Dreisbach's investments in equipment such as light-weight vehicles to comply with the law. The original complaint sought a preliminary and permanent injunction forbidding PCC from engaging in the alleged unlawful business practices, as well as "disgorgement of ill-gotten gains," restitution, and attorney fees and costs. In January 2019, Dreisbach filed a first amended complaint limiting its prayer for relief to a preliminary and permanent injunction, and attorney fees and costs.

In September 2019, Dreisbach filed a motion for a preliminary injunction alleging that evidence obtained through discovery showed PCC was carrying drayage in violation of the Vehicle Code and the Oakland ordinances. In December 2019, the trial court granted Dreisbach's motion for

a preliminary injunction and enjoined PCC from: (1) carrying drayage shipments where the total vehicle weight exceeds 80,000 pounds unless it uses a three-axle chassis that conforms to law; (2) carrying drayage shipments where the total vehicle weight exceeds 95,000 pounds; and (3) violating state or municipal heavy weight rules with respect to drayage operations at the Port of Oakland. The preliminary injunction went into effect January 1, 2020.

## B. The Proceedings Leading to the Motion to Dissolve the Preliminary Injunction

In October 2021, PCC filed motion in limine no. 1 seeking to exclude at trial any evidence of harm to entities other than Dreisbach. PCC claimed that Dreisbach's Chief Executive Officer, Jason Dreisbach,[1] and Chief Operating Officer, John Swinnerton, admitted during depositions that Dreisbach suffered no direct economic harm from PCC's alleged conduct, and only Coolport Management, Cool Port Oakland, and Cool Port Oakland Freight (sometimes collectively referred to as "the Cool Port entities" or "the Cool Port plaintiffs") suffered the alleged injury.

Accompanying PCC's motion in limine were portions of the depositions of the Dreisbach executives. These portions reflected Mr. Dreisbach's testimony, as follows: Dreisbach and Lineage Logistics are partners in a joint venture called Cool Port, a transload facility at the Port of Oakland. The joint venture hired Dreisbach's wholly owned subsidiary—Coolport Management—to run the facility. Coolport Management hauls containers, solicits customers, provides rate quotes, and contracts with customers. When asked what specific harm PCC's unfair business practices caused Dreisbach,

---

[1] We will refer to Jason Dreisbach by his full name or by "Mr. Dreisbach" to avoid confusion with plaintiff Dreisbach.

3

Mr. Dreisbach responded that PCC's illegal operations undermined Dreisbach's investments in assets and equipment to legally haul things. Furthermore, Cool Port Oakland started losing customers due to PCC's alleged unlawful business practices as soon as the facility opened in 2018. When Cool Port Oakland lost such customers, Dreisbach lost revenue.

As for Swinnerton, he testified that Dreisbach and Lineage Logistics entered into a joint venture called Cool Port Oakland. Coolport Management manages the transload and warehouse operations, and Cool Port Freight does the drayage of the containers. As chief operating officer, Swinnerton "oversee[s] the operations of all of our various profit centers," which includes Dreisbach and each of the Cool Port entities.

The record presented does not disclose whether or how the trial court ruled on PCC's motion in limine no. 1. In January 2022, Dreisbach was permitted to file a second amended complaint. The only material change between the first and second amended complaints was the addition of the Cool Port entities as plaintiffs.[2]

**C. The Motion to Dissolve the Preliminary Injunction**

In March 2022, PCC filed a motion to dissolve the preliminary injunction on several grounds, two of which are relevant in this appeal. First, PCC claimed Dreisbach conceded its lack of standing under the UCL when stating that: (1) Dreisbach's proposed second amended complaint would be "adding the parties that PCC alleges are the proper parties with standing to bring the pending action"; and (2) " '[t]he entities involved in the circumstances at issue herein, the marketing and provision of cargo handling

---

[2]    Though not included in the appellate record, the second amended complaint was attached to PCC's appellate brief. On our own motion, we augment the record to include it. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

4

and drayage (transportation) at the Port of Oakland, the billing for such services, and the receipt of revenue for such services, are Cool Port Oakland, LLC, Cool Port Oakland Freight, LLC and Coolport Management LLC.' " (Italics and bold omitted.) Second, PCC argued the preliminary injunction should be dissolved because it was "improvidently" issued in the first place and there was no evidence of any recent weight limit violations.

Plaintiffs Dreisbach and the Cool Port entities opposed PCC's motion to dissolve the preliminary injunction. Plaintiffs denied conceding they lacked standing and summarized the evidence of their harm. They also contended the standing claim was moot in any case given the addition of the Cool Port entities as plaintiffs. Plaintiffs further contended that PCC's alleged compliance with the preliminary injunction could not qualify as a material change in circumstance justifying dissolution of the injunction. Plaintiffs also asserted that PCC improperly destroyed records regarding its alleged compliance with the law.

Jason Dreisbach provided a declaration in support of plaintiffs' opposition. He explained that plaintiff Dreisbach is a partner in the "Cool Port Oakland venture" and sole managing member of Coolport Management, which operates Cool Port Oakland and handles "warehousing, cargo handling, transportation, administration and accounting for Cool Port Oakland LLC, Cool Port Freight, LLC and other affiliated entities." Dreisbach, Coolport Management, Cool Port Oakland, and Cool Port Oakland Freight were all "involved in the circumstances at issue herein, the purchase of equipment, marketing and provision of cargo handling and drayage (transportation) at the Port of Oakland, the billing for such services, and the receipt of revenue for such services."

Mr. Dreisbach further averred: Dreisbach brought the lawsuit based on the harm it was suffering as a result of PCC's unlawful business practices; PCC's conduct "was threatening the viability of Dreisbach"; and "Dreisbach was at risk of losing the value of its substantial investment in the Cool Port venture." Dreisbach "individually paid approximately $4,000,000 for the equipment purchases" and "could not use or enjoy the return on it[s] investment"; Dreisbach was losing revenue as manager of Cool Port and a partner in the Cool Port venture; and PCC's illegal operations deprived Dreisbach and its partners of hundreds of thousands in monthly revenue. Since the preliminary injunction issued, business from "ultra heavy weight customers" had gone to Dreisbach and Cool Port; this business is worth over $1,000,000 annually for a single customer; and at the initial meeting between Dreisbach and PCC to discuss Dreisbach's concerns, PCC adamantly refused to cease its unlawful operations.[3]

## D. The Trial Court's Ruling

The trial court issued a tentative ruling. Citing Code of Civil Procedure section 533,[4] the court granted PCC's motion to dissolve the preliminary injunction on two grounds. First, the court concluded it was unlikely Dreisbach could maintain a "direct" cause of action for harm or injury and thus it was unlikely Dreisbach could succeed on the merits. In reaching this

[3] Plaintiffs' counsel, Edward Bull, also submitted a declaration in opposition to the motion to dissolve. PCC objected to this declaration and its attached exhibits in the trial court and renews those objections on appeal. As discussed more fully, *post* at pp. 14–15, we address the trial court's reliance on one portion of Bull's declaration pertaining to PCC's last alleged violation of the injunction. We do not, however, recite or discuss the other objected-to portions of Bull's declaration, as they are unnecessary to our analysis.

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

conclusion, the court cited *Nelson v. Anderson* (1999) 72 Cal.App.4th 111 (*Nelson*) for the proposition that "an individual cause of action exists only if the damages were not incidental to an injury to the corporation." It also cited *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958 (*PacLink*) for the proposition that: "Because members of the LLC hold no direct ownership interest in the company's assets . . . the members cannot be directly injured when the company is improperly deprived of those assets." The court then highlighted plaintiffs' statements that Dreisbach is a partner in the Cool Port Oakland venture and a managing member of Coolport Management and that " '[t]he entities involved in the circumstances at issue herein, the marketing and provision of cargo handling and drayage (transportation) at the Port of Oakland, the billing for such services, and the receipt of revenue for such services, are Cool Port Oakland, LLC, Cool Port Oakland Freight, LLC and Coolport Management LLC.' " The court concluded that "Dreisbach's investments in the various LLCs are not sufficient to show Dreisbach would be directly harmed by PCC's actions."

Second, the trial court found that, even if Dreisbach were to succeed on the merits, PCC's last alleged violation of the Vehicle Code and heavy weight ordinances occurred in January 2020, so there was no immediate threat of irreparable harm to Dreisbach.

At the hearing to contest the tentative ruling, plaintiffs contended there was substantial evidence that Dreisbach suffered independent harm apart from any derivative harm suffered via the Cool Port plaintiffs. Plaintiffs' counsel indicated the Cool Port entities were added as parties not to recover additional money—as no damages were sought—but "to give the Court a better basis and understanding and a broader scope of the harm that

7

could be considered." As for the court's finding that no violation of the Vehicle Code or heavy weight ordinances had occurred since January 2020, plaintiffs argued the cessation of an activity in compliance with a preliminary injunction cannot constitute changed circumstances to justify dissolution of the injunction. Plaintiffs also pointed out that PCC provided no evidence of its actual compliance and that PCC improperly destroyed records of its alleged compliance.

Ultimately, the trial court adopted its tentative ruling and plaintiffs filed this appeal. Upon receipt of plaintiffs' petition for writ of supersedeas, we stayed the order granting PCC's motion to dissolve the preliminary injunction pending resolution of the appeal.

## DISCUSSION

### A. Standing to Appeal

We first address PCC's contention that neither Dreisbach nor the Cool Port plaintiffs are aggrieved parties under section 902 with standing to appeal. PCC argues Dreisbach lacks standing because it "effectively conceded" that only the Cool Port plaintiffs, not Dreisbach, suffered injury due to PCC's alleged unlawful operations. As for the Cool Port plaintiffs, PCC contends they lack standing because they were not parties when the injunction was granted; the injunction was not granted in their favor; and dissolution of the injunction does not impact their rights or interests. We reject PCC's arguments.

An order dissolving an injunction is an appealable order. (§ 904.1, subd. (a)(6).) Section 902 provides that "[a]ny party aggrieved may appeal." "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52

8

Cal.4th 231, 236.) "An aggrieved party includes a party against whom an appealable order or judgment has been entered." (*County of Riverside v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 20, 27.) "[S]tanding to appeal is construed liberally, and doubts are resolved in its favor." (*K.C.*, at p. 236.)

The order at issue dissolved the preliminary injunction that Dreisbach had obtained to stop PCC from engaging in unlawful drayage operations. As relevant here, both Dreisbach and the Cool Port entities were named plaintiffs in the action and they made a showing below that dissolving the injunction would harm their rights and interests. (*In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193 [" 'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests' "].) This was sufficient to establish that the order injuriously affected the interests of Dreisbach and the Cool Port entities in an immediate and substantial way, such that they are aggrieved parties under section 902.

The fact that the Cool Port plaintiffs were not parties at the time the preliminary injunction was issued is of no moment. Case law makes clear that nonparties who are " 'legally "aggrieved" by a judgment may become a party of record and obtain a right to appeal.' " (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342.) Here, the Cool Port entities became parties to the action and, along with Dreisbach, sought only injunctive relief by way of the second amended complaint and opposed PCC's motion to dissolve the preliminary injunction.

In sum, Dreisbach and the Cool Port plaintiffs all have standing to challenge the order dissolving the preliminary injunction.

9

## B. The Order Dissolving the Preliminary Injunction

We turn to address the propriety of the order dissolving the preliminary injunction.

### 1. General Principles and Standard of Review

"In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors:  the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.)  " 'Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court.' " (*Ibid.*)

Section 533 provides general authority for dissolving an injunction:  "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."  In short, section 533 "articulates three independent bases on which a modification of an injunction may be predicated—(1) change in the facts, (2) change in the law, or (3) ends of justice" (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 85), and courts have inherent power to dissolve an injunction on these grounds (*Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 788).  "[T]he burden is on the restrained party to show by a preponderance of the evidence that one of the circumstances set forth in . . . section 533 is present and justifies a

termination of the [preliminary injunction]." (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1504 (*Loeffler*).)

We review an order dissolving a preliminary injunction for abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 850.) "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1505.)

The trial court dissolved the injunction on two grounds: (1) Dreisbach was unlikely to succeed on the merits; and (2) even if Dreisbach were to succeed on the merits, there was no immediate threat of irreparable harm to Dreisbach. We will examine each ground in turn.

### 2. *Likelihood of Success on the Merits*

In finding Dreisbach was unlikely to succeed on the merits, the court relied on Dreisbach's alleged "admissions" that Dreisbach is a partner in the Cool Port Oakland venture and a managing member of Coolport Management and that " '[t]he entities involved in the circumstances at issue herein, the marketing and provision of cargo handling and drayage (transportation) at the Port of Oakland, the billing for such services, and the receipt of revenue for such services, are Cool Port Oakland, LLC, Cool Port Oakland Freight, LLC and Coolport Management LLC.' "[5] The court found these admissions significant in light of two cases indicating that members of an LLC hold no direct ownership interest in the company's assets and so are not directly

---

[5] These statements were included in Dreisbach's motion for leave to file the second amended complaint and the accompanying declaration of Mr. Dreisbach, which were not included in the appellate record. Because the trial court specifically relied on them in its order, we requested the documents and received a two-page notice of motion for leave to file the second amended complaint and the declaration of Mr. Dreisbach. We hereby augment the record to include these documents. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

11

injured when the company is improperly deprived of those assets. (*PacLink*, *supra*, 90 Cal.App.4th at p. 965; *Nelson*, *supra*, 72 Cal.App.4th at pp. 126–127.)

We conclude that, whether or not Dreisbach could succeed under the UCL, the trial court abused its discretion in dissolving the injunction based on the record before it. Notably, the Cool Port entities had been added to the action as plaintiffs by the time PCC filed its motion to dissolve the injunction. There was no dispute that the Cool Port plaintiffs suffered economic harm as a result of PCC's alleged unlawful business practices. Indeed, PCC itself urged it was the Cool Port entities which suffered the harm that Dreisbach claimed it suffered, and PCC even offered deposition testimony to support this point.

The fact that the Cool Port entities, rather than Dreisbach, might be able to establish the requisite injury at trial does not appear to be a material change in the facts justifying dissolution of the injunction. (§ 533.) This conclusion aligns with cases indicating the omission of a corporate plaintiff in such situations is merely a technical defect. (E.g., *Pasadena Hosp. Ass'n v. Superior Court* (1988) 204 Cal.App.3d 1031, 1033–1036 [adding plaintiff's professional corporation as plaintiff merely remedied a technical defect, because the individual plaintiff was practicing as a corporation at the time of the alleged libelous statement].) Moreover, to the extent the trial court was correct in finding that Dreisbach suffered only derivative harm as a quasi-shareholder of the Cool Port entities, the addition and inclusion of these entities as plaintiffs appears appropriate. (E.g., *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 306 ["where a shareholder seeks to enforce a claim belonging to the corporation, the complaint may be amended to substitute the corporation as the named plaintiff"].)

12

Further, dissolving the injunction would not appear to serve "the ends of justice" on the instant record. (§ 533.) The purpose of a preliminary injunction is to maintain the status quo pending a final decision on the merits of the action. (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 283.) Maintaining the injunction here would have served that purpose, regardless of whether it was the Cool Port entities rather than Dreisbach which were likely to succeed at trial. (Cf. *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173, 177 ["UCL action is an equitable action" and a court of equity may exercise its full range of powers to accomplish complete justice between the parties].) Although the preliminary injunction was issued when Dreisbach was the sole plaintiff, the injunction was not tailored to benefit Dreisbach specifically or exclusively. Instead, the injunction prohibited PCC from violating the heavy weight rules, which meant it directly benefited the Cool Port plaintiffs as competing drayage businesses at the Port of Oakland.

Inexplicably, the trial court's order did not address the critical fact that the Cool Port entities had been added as plaintiffs in the action. PCC cursorily argues in a footnote that the addition of the Cool Port entities does not affect the outcome of this appeal because the Cool Port entities "have presented the same arguments as Dreisbach and would be bound by the same admissions that led to the lower court's findings." This, however, fails to respond to the points discussed above.

Insisting that "Dreisbach could no longer maintain its injunctive relief complaint," PCC cites to section 367 for the proposition that "[e]very action must be prosecuted in the name of the real party in interest." But the circumstances here do not run afoul of section 367. As the moving party seeking to dissolve the injunction, PCC was required to show that none of the

13

plaintiffs was likely to succeed on the merits of the action. Though PCC insists that Dreisbach is not a real party in interest and therefore has no right to injunctive relief, PCC submitted no evidence suggesting that the Cool Port plaintiffs have no interest in the action or are unlikely to prevail on the merits.

In sum, we conclude the trial court abused its discretion in dissolving the injunction based on a finding that just one of the named plaintiffs—i.e., Dreisbach—was unlikely to succeed on the merits of the action.

### 3. *Immediate Threat of Irreparable Harm*

The trial court offered a second ground for dissolving the injunction, namely, that even if Dreisbach were to succeed on the merits, there was no immediate threat of irreparable harm to Dreisbach because PCC's last alleged violation of the heavy weight rules occurred in January 2020.

The only piece of evidence the trial court cited in support of this finding was a paragraph in the declaration of plaintiffs' counsel, Edward Bull, which accompanied the opposition to the motion to dissolve the preliminary injunction. That paragraph reads: "It is untrue that the only evidence of PCC's unlawful business practices relate[s] to the 90 day test period in 2019. Rather, evidence in the case, and that will be presented at trial, shows that PCC had been guilty of these unlawful business practices well before the filing of the present lawsuit, before, during and well after the 90 day period, and even after the grant of the motion for preliminary injunction. . . . Only after counsel for Plaintiffs confronted counsel for PCC in open court before Judge Schwartz regarding PCC's failed compliance after January 1, 2020 (the effective date of the preliminary junction), and the court invited Plaintiff Dreisbach to file a contempt motion, did PCC finally, according to the

14

Declaration of Brandon McDonnell, begin to cease its unlawful business practices."

Contrary to the trial court's assessment, the evidence conveyed by Bull does not substantially support the conclusion that Dreisbach faced no immediate threat of irreparable harm. If anything, it showed that PCC repeatedly engaged in the alleged unlawful business practices and discontinued doing so only when the preliminary injunction issued. PCC—the moving party below—presented no contrary evidence.

As relevant here, " '[a]n injunction is no longer necessary when the defendant *voluntarily* discontinues the wrongful conduct.' " (*Phipps v. Saddleback Valley Unified School Dist.* (1988) 204 Cal.App.3d 1110, 1118 (*Phipps*), italics added.) But compliance with a court order such as a preliminary injunction "does not constitute voluntary discontinuation" rendering injunctive relief inappropriate. (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 10, italics omitted (*Acuna*).) Consequently, PCC's cessation of unlawful conduct because of the preliminary injunction was not a voluntary act that rendered the injunction unnecessary. Nor did evidence of PCC's cessation constitute a "material change in the facts upon which the injunction or temporary restraining order was granted." (§ 533; see *Phipps*, at pp. 1118–1119 [compliance with a preliminary injunction did not render a permanent injunction unwarranted].) Indeed, in one case where the appellants attempted to suggest otherwise, the Court of Appeal pointedly observed that "much of appellants' briefing hinges on the flawed premise, unsupported by authority, that the relative success of the preliminary injunction in reducing nuisance activity must inure to appellants' benefit, commanding a conclusion that there is no longer an ongoing need for injunctive relief." (*Acuna*, at p. 10, italics omitted.)

15

In arguing to the contrary, PCC cites to *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641 (*Feminist Women's Health Center*). There the appellate court stated: "Because injunction is an extraordinary remedy, the remedy should not be exercised unless it is reasonably probable the acts complained of will recur. 'Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur. . . . A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future.' " (*Id.* at p. 1658.) PCC argues this passage supports the trial court's "implicit finding that the long-discontinued alleged offending conduct was not likely to be repeated." We are unpersuaded.

*Feminist Women's Health Center* was an appeal from the issuance of a permanent injunction. The decision did not implicate a dissolution of an existing injunction, and it did not discuss section 533, which governs dissolution of injunctions. (*Feminist Women's Health Center*, *supra*, 32 Cal.App.4th at pp. 1656–1658.) Here, PCC presented zero evidence showing that it was unlikely to resume its unlawful business practices or that dissolving the injunction would serve the ends of justice. Nor did PCC clearly acknowledge that it engaged in the claimed unlawful business practices.

We observe the only other evidence PCC offered in support of dissolving the preliminary injunction was (1) a purported declaration by PCC's vice president, Brandon McDonnell, which stated PCC was not engaging in the alleged unlawful business practice; and (2) plaintiff Dreisbach's October 2021 trial brief, which in PCC's view established that PCC's alleged weight violations ended in January 2020 and/or showed only that PCC engaged in

16

alleged violations of the heavy weight rules from April 30 to July 30, 2019. But neither of these items supports the trial court's finding.

First, even PCC acknowledges that it never actually filed Mr. McDonnell's declaration.[6]

Second, the record reflects that Dreisbach's trial brief, which had been filed before PCC filed its motion to dissolve the preliminary injunction, simply alleged that PCC ceased engaging in the alleged unlawful business practices because of the preliminary injunction. As discussed, such cessation was not involuntary and provided no basis for a conclusion that the injunction was no longer necessary because the threat of immediate harm had ceased. (*Acuna, supra,* 9 Cal.App.5th at p. 10; *Phipps, supra,* 204 Cal.App.3d at pp. 1118–1119.)

Finally, we observe Dreisbach's opposition to the motion to dissolve contended that it demanded records from PCC regarding its compliance with the heavy weight rules and that, after some delay, PCC admitted it had destroyed those records. Dreisbach notes this evidence again in its appellate opening brief, and PCC's only response is a single sentence footnote that reads: "PCC's Alleged Non-Compliance With Discovery has no Bearing on This Appeal." But PCC was the moving party who shouldered the burden of proof below (*Loeffler, supra,* 174 Cal.App.4th at p. 1504), and the record reflects that PCC did not supply any actual proof of a "material change in the facts upon which the injunction or temporary restraining order was granted."

---

[6]  A day before oral argument, PCC belatedly filed a motion to augment the record with a different declaration from Mr. McDonnell, which it filed in June 2020 to support PCC's own motion for a preliminary injunction against Dreisbach. The motion to augment is denied as untimely. (Ct. App., First Dist., Local Rules of Ct., rule 4(c), Time for Seeking Augmentation in this Court.)

(§ 533.)  Given the lack of support for the finding that there was no immediate threat of irreparable harm, the trial court abused its discretion in dissolving the preliminary injunction on this basis.

## DISPOSITION

The order of the trial court is reversed.  Plaintiffs are awarded costs on appeal.[7]  (Cal. Rules of Court, rule 8.278.)


_____
Fujisaki, Acting P.J.


WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.


*Dreisbach Enterprises, Inc. v. Pacific Coast Container, Inc.* (A166162)

---

[7]     We issued a tentative opinion along the lines set forth in this opinion.  PCC thereafter moved to dismiss the appeal on the same grounds raised in its appellate brief and rejected in the tentative opinion.  PCC also moved to augment the record.  We denied the motions for the reasons stated.  Plaintiffs may seek any additional costs associated with PCC's motions to which it is entitled pursuant to California Rule of Court 8.278(d).