Filed 7/18/24

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LET THEM CHOOSE,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>　　Defendant and Respondent. | D082478<br><br><br><br>(Super. Ct. No. 37-2021-00043172-CU-WM-CTL) |
| S.V. et al.,<br>　　Plaintiffs and Respondents,<br><br>　　v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>　　Defendant and Appellant. | (Super. Ct. No. 37-2021-00049949-CU-WM-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge. Request for judicial notice granted. Reversed.

Aannestad Andelin & Corn, Lee Michael Andelin and Arie L. Spangler for Plaintiff and Appellant Let Them Choose.

Precept Group, Chris Czaplak; Siri & Glimstad and Allison R. Lucas for Plaintiffs and Appellants, S.V., et al.

Atkinson, Andelson, Loya, Ruud & Romo, Mark Robert Bresee, Amy W. Estrada and Alyssa Ruiz de Esparza for Defendant and Respondent.

A developed system of justice, with fair and impartial courts to decide disputes among citizens, is in many ways the hallmark of a civilized society. By providing an accessible forum for resolving both economic and philosophical disagreements, courts preserve order and a sense of community, preventing these differences from devolving into active conflict and even violence. Equally important, courts foster attitudes of tolerance for and respectful acceptance of different points of view, traits often sadly lacking in today's polarized political landscape.

Designed to preserve and enhance access to the courts, the private attorney general theory for the award of attorney's fees, codified in Code of Civil Procedure[1] section 1021.5, can be viewed as a corollary principle. To be available to resolve important disputes, courts must be accessible; to be accessible, the cost of access must not overwhelm the economic benefit to be achieved. This cost-benefit calculus presents special challenges where the benefits of litigation to the individual litigant are largely noneconomic, and section 1021.5 seeks to address the problem by allowing for the award of attorney's fees where the litigation enforces an important right affecting

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

the public interest and confers a significant benefit—even a nonpecuniary benefit—on the general public or a large group of persons.

The underlying case arises out of the recent COVID-19 pandemic. In September 2021, at the height of the pandemic, the defendant San Diego Unified School District (District) proposed to implement a local "Vaccination Roadmap" (Roadmap) mandating that District students receive a COVID-19 vaccination in order to attend in-person classes and participate in extracurricular activities at the District's schools. In *Let Them Choose v. San Diego Unified School Dist.* (2022) 85 Cal.App.5th 693 (*Let Them Choose I*), this court affirmed the trial court's order invalidating the Roadmap, holding that a local vaccination requirement as proposed by the District was preempted by state law. In doing so, we characterized the case as presenting "issues of broad public interest." (*Id.* at p. 700, fn. 1.)

Following our decision, the prevailing plaintiffs Let Them Choose (an organization) and S.V. (an individual parent) returned to the trial court and filed motions requesting an award of attorney's fees under section 1021.5. The court (but a different judge than the one who invalidated the Roadmap) denied the motions, concluding that the litigation "did not enforce an important right affecting the public." The court also believed that an award of attorney's fees against the District was not appropriate because, in adopting the vaccination requirement, it sought to protect students and "did nothing to adversely affect the public interest."

Although this case represents another chapter in the age-old debate about whether commendable ends justify questionable means, the trial court's reasoning reflects an inappropriately narrow reading of both the concept of "public interest" in section 1021.5 and the beneficial effects of plaintiffs' lawsuit. It may well be that requiring vaccinations for students

3

was a good public health policy and a prudent precaution. But this case was never about the merits of the District's underlying decision. Rather, it was always about process. The problem with the Roadmap was that the State had established procedures for adding new school attendance vaccination requirements, and the District failed to follow the law.

Nor is it correct to say that plaintiffs' lawsuit did not enforce compliance with state law.[2] The District's causation argument, accepted by the trial court, suggests that the lawsuit did not really stop the implementation of a vaccination requirement; rather, the District chose to abandon the Roadmap for unrelated reasons. But again, the District's focus in defining the public interest is unduly narrow. In September 2021, the District announced its intention to unilaterally impose a vaccination requirement, and it never retreated from its assertion in the trial court or on appeal that it was *entitled* to implement the Roadmap. That it chose to delay and ultimately cancel its plans does not change the fact that the lawsuit enforced an important right affecting the public interest by making clear that both now and in the future, the District was required to follow the mandatory vaccination protocols established by state law.

The public interest that plaintiffs' lawsuit sought to enforce was the District's obligation to comply with established procedures, even as it sought to achieve laudable goals. The interest is an important one, but vindicating it generates no economic benefit for its champions. As a result, an award of attorney's fees under section 1021.5 is peculiarly appropriate. Because plaintiffs' lawsuit demonstrably promoted the strong public interest in following fair and uniform procedures, and because the District's announced

---

[2] In reality, plaintiffs filed two lawsuits that were consolidated in a single action before the trial court. We use "lawsuit" to refer to the consolidated action.

4

attempt to adopt the Roadmap was inconsistent with those procedures, we must reverse the trial court's order and remand for a determination as to the appropriate amount of attorney's fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Chapter 1: Plaintiffs Successfully Challenge the Roadmap*

The District, the second largest public school system in California, serves more than 100,000 students.[3] As our opinion in *Let Them Choose I* explained, the foundational facts regarding the underlying lawsuit were "few and undisputed." (85 Cal.App.5th at p. 699.) On September 28, 2021, the District's board adopted a plan, referred to as the Roadmap, that would generally require proof of a COVID-19 vaccination for students to attend in-person classes and participate in extracurricular activities beginning with the spring semester in January 2022. Shortly thereafter, plaintiffs filed this lawsuit challenging the District's authority to unilaterally impose a local vaccination requirement. They contended that any decision to condition public school attendance on vaccination status had to be made at the state level. In an order issued on December 20, 2021, the trial court (Judge Meyer) agreed with plaintiffs. Although noting that the Roadmap "appears to be necessary and rational, and the district's desire to protect its students from COVID-19 is commendable," the court concluded that "the field of school vaccine mandates has been fully occupied by the State, and the Roadmap directly conflicts with state law."

Judgment was entered on January 6, 2022 granting plaintiffs' petitions for writ of mandate. On the same day, the court declined to stay the effect of

---

[3] (About Us - San Diego Unified School District, <https://www.sandiegounified.org/about/about_s_d_u_s_d/about_us> [as of July 18, 2024], archived at <https://perma.cc/3WPZ-QCWA>.)

the judgment pending appeal, although it acknowledged the District's right to seek relief in this court. The District filed a notice of appeal on January 10, and 11 days later sought a writ of supersedeas in this court. On February 1, we granted the District's request to stay the trial court's order and judgment pending resolution of the appeal.[4]

In November 2022, this court affirmed the trial court's judgment on plaintiffs' petitions for writ of mandate.[5] We held that the Roadmap was preempted because (1) it conflicted with specific state standards, and (2) the Legislature had impliedly "occupie[d] the field" with regard to school vaccination requirements by providing comprehensive state procedures that the District made no attempt to comply with. (*Let Them Choose I, supra,* 85 Cal.App.5th at p. 702.) In February 2023, the Supreme Court denied a request to depublish the opinion and declined to review the matter on its own motion.

### *Chapter 2: Plaintiffs Request Attorney's Fees*

Following issuance of the remittitur, each plaintiff filed a motion for attorney's fees pursuant to the private attorney general doctrine codified in Code of Civil Procedure section 1021.5. (See *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 925 (*Woodland Hills*); see generally *Serrano v. Priest* (1977) 20 Cal.3d 25 (*Serrano*).) Both argued they were successful parties in a lawsuit that "resulted in the enforcement of an important right affecting the public interest" within the meaning of the statute. In particular, they asserted that (1) they had conferred a

---

[4]     Plaintiffs' petition for review of our decision on supersedeas was denied by the Supreme Court on April 20, 2022.

[5]     We grant plaintiffs' unopposed request to take judicial notice of the appellate record in *Let Them Choose I.*

"significant benefit . . . on the general public or a large class of persons," (2) the necessity and "financial burden of private enforcement . . . [made] the award appropriate," and (3) there was no pecuniary recovery out of which the fees could be paid. (§ 1021.5.)

In response, the District opposed the motions based primarily on two factual premises. First, it contended that plaintiffs' lawsuit did not advance, but rather interfered with, the public interest. In this regard, it referred to Judge Meyer's comments in granting the petitions for writ of mandate that the Roadmap appeared to be "necessary and rational," and he viewed the District's desire to protect its students as "commendable." On this basis it sought to argue that the District was not the type of party against whom private attorney general fees should be awarded because it did nothing "to adversely affect the public interest." (See *Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954 (*Joshua S.*); *Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 161 (*Save Our Heritage*).)

Next, in what is essentially a causation argument, the District asserted that plaintiffs' lawsuit was not successful and conferred no actual benefit on the public at large or a significant group of people.[6] In the District's view, the lawsuit was not the reason why the Roadmap's vaccination requirements were never implemented. Rather, the District always considered the Roadmap to be a tentative proposal subject to change. Unrelated events ultimately caused the District to reassess its proposal, first delaying its implementation and later cancelling it entirely. In the end, according to the District, plaintiffs' lawsuit made no difference.

---

[6] In the District's words, "There simply was no causal connection here between the lawsuits and the District's decision to twice delay then abandon consideration of a vaccination requirement."

7

Accepting both prongs of the District's argument, Judge Whitney denied plaintiffs' motions for attorney's fees. Addressing the District's causation reasoning, he noted that this court stayed the effect of the trial court judgment during the pendency of the appeal. In the judge's view, "[t]he fact [that the] District did not attempt to implement the Roadmap or any modified vaccination requirement while the stay of the judgment was in place supports that Plaintiffs' litigation did not enforce an important right affecting the public."

As to the second rationale, Judge Whitney relied on Judge Meyer's comment that the District's "desire to protect its students from COVID-19 [was] commendable." As a result, he felt he could not conclude that the District "adversely affected the public interest such that it is a party from whom attorney's fees should be collected." He believed that the District's salutary intentions were significant, finding that in adopting the Roadmap it "was not planning to impair statutory or constitutional rights of the public, but to protect the health and safety of students."

## DISCUSSION

The private attorney general doctrine as codified in section 1021.5 provides for the award of attorney's fees to a successful party where litigation "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Its purpose is to encourage lawsuits that further the public interest as expressed in constitutional and statutory law by " 'awarding substantial attorney's fees . . . to those who successfully

8

bring such suits and thereby bring about benefits to a broad class of citizens.' " (*Serrano, supra,* 20 Cal.3d at p. 43, quoting *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 27.) "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies . . . and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills, supra*, 23 Cal.3d at p. 933.) Section 1021.5 thus "acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring." (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 611–612.)

Although we review a trial court's decision to grant or deny fees for abuse of discretion, there are two important qualifications. First, a court abuses its discretion when it fails to apply the proper legal standard to the issue before it. (*Grossmont Union High School Dist. v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 584.) We thus "review the entire record, paying particular attention to the trial court's stated reasons in denying or awarding fees and whether it applied the proper standards of law in reaching its decision." (*Crawford v. Bd. of Educ.* (1988) 200 Cal.App.3d 1397, 1406.) In this case, "[t]he pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298.)

9

Second, where a litigant meets the statutory criteria "the court's discretion to deny fees quite limited." (*Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 450; see Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2024) § 2.51.) "Unless special circumstances would render an award of 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria have been met." (*Carlsbad Police Officers Association v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 145; see generally *Serrano v. Unruh* (1982) 32 Cal.3d 621, 632–633 ["absent facts rendering the award unjust, parties who qualify for a [section 1021.5] fee should recover for all hours reasonably spent"].)

In this case, the trial court implicitly recognized that plaintiffs were the successful parties in the lawsuit, somewhat grudgingly noting that "judgment was entered in favor of Plaintiffs based on the narrow issue that the Roadmap mandate was preempted by state law." But it went on to deny the motions based on two distinct rationales. After examining each in more detail, we conclude that neither supports the decision to deny an award of attorney's fees.

**A.** ***Even if plaintiffs' lawsuit did not necessarily "cause" the District to halt its implementation of the Roadmap, it nonetheless enforced an important right affecting the public interest.***

When the Roadmap's requirements were announced in September 2021, the public (including parents and students) were told that the vaccine mandate would be implemented with the start of the second semester of the school year on January 24, 2022. That remained the District's announced position when, on December 20, 2021, Judge Meyer issued his ruling granting plaintiffs' petitions for writ of mandate. And although it strenuously defended its right to locally mandate COVID-19 vaccinations for students

10

attending its schools at least until this court's published decision in *Let Them Choose I* on November 22, 2022, the District pivoted in responding to plaintiffs' attorney's fee motions. According to a declaration by the District's superintendent in May 2022, "[b]y mid-December, 2021, it had become clear that the District's implementation of the student vaccination requirement would be delayed and not implemented on the timeline originally planned." On March 8, 2022, the District's Board of Education adopted a resolution that deferred the Roadmap's effective date until the summer of 2022. By 2023, the District had concluded that a vaccination requirement was unnecessary. In the superintendent's view, even if Judge Meyer had ruled in favor of the District, "the student vaccination requirement would not have been implemented on January 24, 2022 as originally planned [and] would have been delayed to the start of the Summer, 2022 regardless." In addition, this court's order on supersedeas staying the effect of the trial court's order pending resolution of the appeal was cited as additional proof that the District could have proceeded with vaccination requirements but chose not to for reasons unrelated to plaintiffs' lawsuit.

Based on this factual foundation, the District opposed the award of attorney's fees under section 1021.5, contending that the litigation had achieved nothing of public significance or otherwise. It asserted that the lawsuit "neither impacted nor benefitted *any* students" because it "did not prevent the District from implementing a vaccination requirement." Rather, the District's decisions were guided solely "by public health conditions and operational considerations" such that there " 'simply was no causal connection' " between the lawsuit and the failure to implement the Roadmap.

11

In focusing on the failure to implement a vaccination requirement, the District adopts an unduly narrow definition of the relevant public interest and the nature of the benefit achieved by the litigation. In September 2021, the District announced its intention to unilaterally impose a vaccination requirement. Three months later, plaintiffs' lawsuit resulted in a court order telling the District it could not do so, and that order was affirmed on appeal. Plaintiffs never contended, either exclusively or even primarily, that a vaccination requirement could never be imposed. Instead, they argued that the District had gone about it in the *wrong* way. As reflected in both plaintiffs' initial complaints, the District could not adopt a local COVID-19 vaccine requirement because state law fully occupied the field of school immunizations and preempted local action. This same theme was repeated throughout the trial court briefing.[7]

Viewed correctly from this perspective, plaintiffs' lawsuit accomplished exactly what it sought to achieve, furthering the strong public interest in a comprehensive statewide school immunization policy. As we explained in *Let Them Choose I,* while "the Legislature contemplated new vaccine mandates in the future without further legislative action," it assigned the responsibility for that decision "*not to school authorities,* but rather to the [State Department of Public Health (DPH)]." (85 Cal.App.5th at p. 706.) And before making that decision, DPH was required to consult with two national physician organizations and the federal Advisory Committee on Immunization Practices of the United States Department of Health and Human Services. (*Ibid.*) By ensuring that the District followed proper state

---

[7] Indeed, in briefing on the motions for attorney's fees the District appears to concede that both plaintiffs "litigat[ed] the exact same, narrow issue — preemption."

12

procedures,[8] plaintiffs conferred a significant benefit on the general public and, in particular, on the parents and children in the District who, to that point, had not chosen to be vaccinated for COVID-19.

Moreover, we issued a published opinion in *Let Them Choose I* to confirm existing law that a local school district is subject to statewide procedures on school immunization established by the state Legislature and require that the law be followed. (See *McCormick v. Public Employees' Retirement System* (2023) 90 Cal.App.5th 996, 1010.) This statement of legal principles benefits citizens throughout the state, not just residents living within the boundaries of the District, and it will continue to guide school officials into the future. Indeed, in the course of that opinion we specifically noted that the District's appeal "present[ed] issues of broad public interest that are likely to recur." (*Let Them Choose I, supra,* 85 Cal.App.5th at p. 700, fn. 1.) As we are in a unique position to assess the effect of a published appellate opinion and the reasons why publication was appropriate (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 8), the fact that we noted "broad public interest" in the subject before the issue of attorney's fees arose is significant. (See *Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 764 ["The publication of an opinion suggests that the case involved a matter of public importance."].)

The trial court erred in looking exclusively at whether the District would have actually implemented a mandatory vaccination policy in the absence of plaintiffs' lawsuit. We conclude that the plaintiffs' lawsuit and the published appellate opinion it produced enforced an important public

---

8    We specifically stated that the District "should have urged DPH to follow the existing statutory procedure under [Health and Safety Code] section 120335, subdivision (b)(11) for adding new immunizations." (*Let Them Choose I, supra,* 85 Cal.App.5th at p. 707.)

right affecting the public interest—the right to expect that California public school districts will comply with California state law establishing uniform statewide procedures for school immunization requirements. In doing so, the lawsuit conferred a substantial benefit on the general public or a large group of people within the meaning of section 1021.5.

**B.** ***The District's good faith and "commendable" intentions are not a proper basis to deny an attorney's fee award.***

Emphasizing that "[t]he Roadmap was approved based on the recommendations of scientists and public health officials assessing the then-current COVID-19 conditions and available data," the District asserts that its actions in adopting a vaccination requirement were taken with the best of intentions. Indeed, no one has suggested otherwise. Both judges who handled this case took note of the District's desire to protect its students. Even as Judge Meyer found that the Roadmap was preempted by state law, he called the District's motives "commendable." Judge Whitney took this observation a step further, concluding that it was a sufficient basis to deny any award of attorney's fees because such a well-motivated public entity was "not the type of party on whom private attorney general fees were intended to be imposed." Referencing a judicially created exception, he suggested that the District should not be responsible for an attorney's fee award because it did nothing to "adversely affect the public interest." As was true with respect to its causation analysis, the trial court's conclusion misapplies the applicable legal standard.

It is well settled that private attorney general fees may be awarded against a public entity such as a school district. (See *County of Fresno v. Lehman* (1991) 229 Cal.App.3d 340, 349 ["section 1021.5 was intended to be used as a tool against *any* individual or entity, public or private"].) The mere fact that a fee award against a public entity will be borne by taxpayers

14

provides no justification to deny a fee request or award less than a reasonable fee. (*Schmid v. Lovette* (1984) 154 Cal.App.3d 466, 476 (*Schmid*) [that the burden of a fee award will fall on taxpayers "does not constitute a special circumstance rendering the fee unjust"].) Here, however, the court invoked a narrow exception that would justify denying a fee award if the losing party did nothing "to compromise the rights of the public." (*Joshua S., supra,* 42 Cal.4th at p. 958.) Judge Whitney seemed to believe that a beneficial local vaccination requirement, even if technically preempted by state law, did nothing to compromise public rights.

*Joshua S.* recognized a "limited exception" to the general rules applicable to the award of attorney's fees under section 1021.5 arising from unique circumstances. (See *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026.) The underlying case involved litigation between two women, Sharon and Annette, who were in a committed relationship. (See *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417 (*Sharon S.*).) While in that relationship, Sharon gave birth to two children by artificial insemination. Annette adopted the first child with Sharon's full consent. They planned for Annette to adopt the second child as well, but before the adoption could be finalized, the relationship deteriorated and Sharon attempted to withdraw her consent. In *Sharon S.*, establishing an important precedent, the Supreme Court validated the concept of a "second-parent" adoption over the objection of the birth mother and despite the fact that she retained her parental rights. (*Id.* at p. 422; *Joshua S., supra,* 42 Cal.4th at p. 949.)

Following the Supreme Court's decision in *Sharon S.*, Annette sought to recover reasonable attorney's fees from Sharon under section 1021.5, which the trial court awarded. (*Joshua S., supra*, 42 Cal.4th at p. 951.) On appeal,

the Supreme Court reversed.  It held that even if Annette otherwise satisfied the requirements for an award of fees under the private attorney general theory, attorney's fees should not be imposed on an individual like Sharon "who has only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, but otherwise done nothing to compromise the rights of the public or a significant class of people." (*Id.* at p. 954.)

It was in this sense, the Supreme Court explained, that the party against whom fees are awarded must have "done something more than prosecute or defend a private lawsuit." (*Joshua S.*, *supra*, 42 Cal.4th at p. 954.)  They must have "done something to adversely affect the public interest." (*Ibid.*)  Justice Moreno's opinion suggested that enforcement of an important right affecting the public interest "implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation.  It does not appear to encompass the award of attorney fees against an individual who has done nothing to curtail a public right other than raise an issue in the context of private litigation that results in important legal precedent." (*Id.* at p. 956.)

In the court's view, "Sharon was a private litigant with no institutional interest in the litigation, and the judgment she sought in the present case would have settled only her private rights and those of her children and Annette.  She simply raised an issue in the course of that litigation that gave rise to important appellate precedent decided adversely to her." (*Joshua S.*, *supra*, 42 Cal.4th at p. 957.)  Without more, the court concluded, "Sharon [was] not the type of party on whom private attorney general fees were intended to be imposed." (*Id.* at p. 953.)

This court applied the *Joshua S.* exception to another unusual set of circumstances in *Save Our Heritage, supra,* 11 Cal.App.5th 154. There, a local citizens' organization successfully challenged the city's approval of a site development permit for the revitalization of San Diego's Balboa Park, and the trial court granted a petition for writ of mandate. Although the city did not appeal the ruling, a local committee project proponent did, and when we reversed the trial court's decision, the committee sought an award of private attorney general fees. (*Id.* at p. 157.) We held that the citizens' organization was "not the type of party against whom the court may impose such an award" (*id.* at p. 158) because it merely "sought to correct what [it] perceived to be violations of state and local environmental, historic preservation, and land use laws." (*Id.* at p. 162.) Indeed, although the litigation was ultimately unsuccessful, we concluded that it "was precisely the type of enforcement action section 1021.5[ ] was enacted to promote." (*Save Our Heritage*, at p. 162.)

This case involves none of the unusual circumstances that were present in either *Joshua S.* or *Save Our Heritage.* As the Supreme Court made clear in *Joshua S.*, the narrow exception it recognized applied only to a private individual litigant "with no institutional interest in the litigation" who has "done nothing to adversely affect the rights of the public . . . other than raise an issue in the course of private litigation that could establish legal precedent adverse to a portion of the public." (*Joshua S., supra,* 42 Cal.4th at pp. 949, 957.) Here, in contrast, the District's Roadmap "unlawfully [sought] to usurp th[e] authority" of the state DPH, thereby compromising the public interest. (*Let Them Choose I, supra,* 85 Cal.App.5th at p. 707.) Similarly, the District is the antithesis of the citizens' organization attempting to challenge governmental action in *Save Our Heritage.* Clearly there is nothing in our

opinion there that would in any way preclude the award of attorney's fees against a large governmental entity such as a city or school district that was found to have violated the law.

In truth, the District's argument and the trial court's acceptance of it have nothing to do with any implied legislative intent that a school district acting in violation of state law is not the type of party against which attorney's fees can be awarded. (See *Joshua S., supra,* 42 Cal.4th at p. 956.) By its express terms, *Joshua S.* does not restrict private attorney general fee awards to instances where the losing party acted in bad faith. (*Id.* at p. 958; see *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 983 ["A finding of fault or misconduct by the opposing party is not required."].) Nor does it create a "good faith" defense to an attorney's fee motion under section 1021.5. (*Sweetwater*, at p. 983; *City of Los Angeles v. Metropolitan Water Dist. of Southern California* (2019) 42 Cal.App.5th 290, 303 ["All that it is required for an award of attorney fees under section 1021.5 is ' "that the party against whom such fees are awarded must have done or failed to do something, in good faith or not, that compromised public rights." ' "]; see generally *Schmid, supra,* 154 Cal.App.3d at p. 475.) Most especially, it does not authorize courts to make subjective value judgments about the merits of the challenged action, awarding attorney's fees only where they find the litigation position of the losing party sufficiently reprehensible.

The right to "due process" is fundamental to our constitutional system, and the underlying case was ultimately about requiring that the District comply with established process and procedure. No one would argue that uniform statewide standards adopted by the People's duly elected representatives after legislative study and debate can be ignored merely

18

because the end sought to be achieved is arguably a virtuous one.  In a similar fashion, when citizens bring a successful legal action to ensure that those statewide standards are followed, a court cannot deny them statutory attorney's fees to which they would otherwise be entitled merely because it might disagree with their ultimate aim.  A law that is not fairly applied to all protects none.

## DISPOSITION

The order denying plaintiffs' motions for attorney's fees is reversed with directions to enter a new order granting the motions.  The matter is remanded to the superior court to determine the appropriate amount of fees. Plaintiffs are entitled to costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.